## CARTER v. ATLANTA & ST. A. B. RY. CO.
### No. 12328.

United States Court of Appeals
Fifth Circuit.

Nov. 19, 1948.

J. Kirkman Jackson, of Birmingham, Ala., for appellant.

James N. Frazer, of Atlanta, Ga., and Alto V. Lee, III, of Dothan, Ala., for appellee.

Before McCORD and LEE, Circuit Judges, and MIZE, District Judge.

LEE, Circuit Judge.

This suit as originally filed by the appellant, plaintiff below, claimed damages of the appellee, defendant below, under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for injuries sustained through the negligence of defendant's employees while he was in the service of the defendant as a trainman on a train being operated by defendant in interstate commerce. By amended petition, he included a

cause of action under the Federal Safety Appliance Act, 45 U.S.C.A. § 1 et seq. The injuries were alleged to have occurred during switching operations by the defendant's train crew at and near the plant of the International Paper Co., in Panama City, Florida, in connection with an interstate movement. In its answer, the defendant denied that the injuries were attributable to its negligence and alleged that the plaintiff had been hurt as the result of his own negligence which proximately contributed to the injuries. On the day of the trial, plaintiff, by amended petition, alleged that he was injured by reason of the violation by defendant of the Safety Appliance Act in permitting a car to be used in interstate commerce unequipped for coupling automatically by impact. The case was tried to a jury, and, upon request of the defendant, the court below in its charge instructed the jury that plaintiff's injuries were in no wise attributable to a violation of the Safety Appliance Act, and that the jury should not consider this element in arriving at a verdict. The trial resulted in a verdict for the defendant, and from the judgment entered thereon, the plaintiff appealed.

The evidence is without serious conflict and may be briefly summarized as follows: While the train of defendant was at Panama City, it engaged in switching operations which were under the supervision of the plaintiff, who was acting in the stead of the conductor who at the time was filling in some reports in a nearby shack. Early in the switching operation, a woodrack car, loaded with pulpwood, was spotted on the main-line track; later in the switching operations, it became necessary to couple on to and to move it. Just prior thereto, the engine had coupled onto some seven or eight boxcars, and the engineer, responding to a signal from the plaintiff, moved the string of boxcars up to the woodrack car for the purpose of making the coupling. Whether because plaintiff himself had set the coupling improperly or because the coupling was defective, the impact failed to effect automatically a coupling, and the woodrack car, from the impact, moved along the main line and onto a siding. Thereupon, the plaintiff ran after the moving car and upon overtaking it mounted its

bulkhead and set the hand brake, bringing it to a stop. He testified that, when he brought the woodrack car to a stop, he looked up and saw the engine and boxcars bearing down on him out of the night at an excessive speed; that the cars attached to the moving engine struck the woodrack car a second time; and that, while the coupling worked automatically on this second contact, coupling the woodrack car with the rest of the train, the jar or jolt of the collision threw him onto the car floor, where the pulpwood, dislodged by the impact, fell and rolled across him. It was mainly upon plaintiff's evidence that the court below acted in instructing the jury that the Federal Safety Appliance Act was without application. This instruction is chiefly relied on by appellant as constituting reversible error. In this we do not agree.

■ The failure of the coupling to function automatically upon the first impact did not result in injury to the plaintiff. His injuries occurred when the train engineer, after this failure, in response to his signal to come ahead, continued to move forward, striking the woodrack car a second time. The train crew, with the exception of the plaintiff, all testified that the train was moving slowly, about four to six miles an hour; that they were not aware that the first coupling had failed, nor were they aware that the woodrack car had moved and was running wild as a result of the impact. Plaintiff admitted signalling the engineer to come ahead after the coupling failed the first time. He admitted that the coupling worked perfectly the second time. His injuries, therefore, may not be said to have resulted from a defective coupling. They clearly are chargeable to the second impact and the resulting fall.

Appellant argues that failure of the coupling to function automatically the first time resulted in the woodrack car moving forward and made it necessary that he board it and apply the brake to stop it; that the first failure to couple, therefore created a situation which resulted in the second impact; hence the original failure was the proximate cause of his injuries. The better view, we think, is that the fail-

721

ure to couple the first time created a condition or set the stage, with respect to which a new act was to operate. This new act began with plaintiff's signal to the engineer to come ahead, after the failure of the woodrack car to couple upon the first impact. It ended when the woodrack car automatically coupled on the second impact. In these circumstances, the failure to couple on the first impact was the remote, not the proximate, cause of plaintiff's injuries. The authorities cited by the appellant to the effect that one failure to couple automatically is enough to sustain a charge that the Safety Appliance Act has been violated are without application to the facts of this case. The court did not err in directing the jury to ignore this feature of plaintiff's alleged cause of. action.

■ There was evidence to the effect that the woodrack car, after the first impact, moved from the main track onto a siding and into a curve of the siding, and that the woodrack car, on entering the curve, could not be seen by the engineer. Appellant contends that it immediately became the engineer's duty under the rules of the company, which rules were introduced in evidence, to bring his train to a stop. Oral testimony was introduced by defendant, over objection, to explain these rules. The overruling of the objection is assigned as error. As the rule relied on is ambiguous,* the testimony was properly admitted, to make clear the practice and procedure to which it applied. This evidence demonstrates that the rule which required the engineer to stop the train in switching when signals were "lost to view," had no reference to a temporary situation such as occurs when the train is moving on a curve, and it was not the practice to stop the train on a curve because some part thereof was temporarily out of view.

■ Appellant also contends that he was prejudiced by a part of the court's verbal charge and by the court's refusal to give a special charge which he had requested. The charge as it was given was a fair discussion of the law applicable under the evidence. Standing alone, the part

of the charge of which the appellant complains might possibly have been prejudicial, but, when it is considered in the light of the entire charge, we think, if any prejudice resulted, it was inconsequential. The requested charge dealt with the measure of damages, and, since the issue of negligence was considered by the jury and resolved by the jury in defendant's favor, a refusal to give the charge was harmless error.

No reversible error appearing, the judgment appealed from is

Affirmed.

---

* The rule reads: "If, in switching, the signals are lost to view, stop must be made until signals can again be seen."
■