## CARTER *v.* ATLANTA & ST. ANDREWS BAY RAILWAY CO.

No. 23.   Argued October 14, 1949.—Decided December 19, 1949.

*J. Kirkman Jackson* argued the cause and filed a brief for petitioner.

*B. D. Murphy* argued the cause for respondent. With him on the brief was *James N. Frazer.*

Mr. Justice Clark delivered the opinion of the Court.

The Federal Safety Appliance Acts require railroad cars used in interstate commerce to be equipped with couplers coupling automatically by impact.[1] This case brings before us for review another action for damages by a railroad employee under the Safety Appliance Acts and the Federal Employers' Liability Act.[2] The trial court instructed the jury that there could be no liability based on any "defect" in the "automatic coupling system," but submitted the case on issues of negligence. There was a verdict against the plaintiff upon which judgment for the railroad was entered. The Court of Appeals affirmed. 170 F. 2d 719. We granted certiorari because of the confusion which has developed in the application of the two statutes. 336 U. S. 935. Our duty to review certain cases of this nature is settled. *Wilkerson* v. *McCarthy,* 336 U. S. 53 (1949); *Keeton* v. *Thompson,* 326 U. S. 689 (1945); *Ellis* v. *Union Pacific R. Co.,* 329 U. S. 649 (1947).

On February 2, 1946, the petitioner was injured while acting as "swing man" of a switching crew on the respondent railroad. The crew of five men were engaged at night in switching operations at and near the International Paper Company plant in Panama City, Florida.

---

[1] "It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." 27 Stat. 531, 45 U. S. C. § 2.

[2] 35 Stat. 65, as amended, 45 U. S. C. §§ 51–59.

The conductor of the crew had laid out a plan for coupling together a number of cars, some of which were on storage tracks and one on the main line. The ultimate objective was to switch some wood rack cars loaded with pulpwood into the wood yard of the paper concern. In the conductor's absence petitioner was in charge of the switching operations and attempted to carry out the instructions given him.

The engine, after coupling in front of it a box car followed by eight flat cars, was engaged in backing the train of cars onto the main line, in order to couple, at the end of the train, a Louisville & Nashville Railroad wood rack car loaded with pulpwood. The petitioner had previously set the brake and had opened both lips of the coupler on the L. & N. car preparatory to attaching the car to the train. He had given the footboard man the slow signal ahead for coupling, which had been passed on to the engineer. The engineer brought the train forward and hit the L. & N. car in the usual manner necessary for coupling, but instead of coupling to the train the L. & N. car started rolling down the tracks, which were, at this point, on a downgrade.

Petitioner saw that the L. & N. car had not coupled and ran after it for some fifty or sixty feet, climbed to the bulkhead where the brake wheel was located, and applied the hand brake to stop the car. He was able to bring the car to a stop only after it had left the main line and traveled around a curve for some six car lengths. Looking up, he saw the train moving toward him about twenty feet away at a speed which conflicting testimony places at a maximum of fifteen miles per hour to a minimum of two miles per hour. Petitioner grabbed the brake wheel to brace himself, but the train hit the L. & N. car so violently that it threw the petitioner about six feet down into its hold. This time the coupling was successful, and as the L. & N. car jerked from the impact some

of the pulpwood loaded in the car was pitched forward on the petitioner, causing the alleged injuries.

The engineer testified that he did not know whether the L. & N. car had safely coupled at the first impact. He contended that after this impact, he received the come-ahead signal from the petitioner, whereupon he moved the train forward at about six miles per hour. The testimony was in sharp conflict with reference to this signal, as well as to other details of the incident.

Defendant moved for a directed verdict as to the failure to couple on the ground that while the coupler failed to couple on the initial impact, "it worked previously and worked subsequently, and the proof shows no defect in it; and under the finding in Western & Atlantic Railroad Company vs. Gentile, 198 S. E. 257, that this rule of law is laid down . . . that the failure of couplers to couple automatically by impact is not per se a violation of this Act . . . ." The District Court granted the motion, instructing the jury "that there is no evidence in this case . . . from which you could properly find there was defect in this . . . automatic coupling system on that car." The Court of Appeals affirmed on another theory: that the failure to couple on the first impact "was the remote, not the proximate, cause of plaintiff's injuries."

The trial court did submit the cause on the more general negligence allegations, and on these a verdict was returned for the respondent. But petitioner objects to those portions of the trial court's charge covering contributory negligence. The Court of Appeals admitted that standing alone, the charge "might possibly have been prejudicial," but stated that here it was "inconsequential."

In these conclusions the court below was in error.

*First.* Since 1893 the Congress has made it unlawful for a railroad company such as respondent to use any car on its line "not equipped with couplers coupling automatically by impact." This Court has repeatedly attempted

to make clear that this is an absolute duty unrelated to negligence, and that the absence of a "defect" cannot aid the railroad if the coupler was properly set [3] and failed to couple on the occasion in question. See *O'Donnell* v. *Elgin, Joliet & Eastern R. Co.,* 338 U. S. 384, 390 (1949), and cases cited. The fact that the coupler functioned properly on other occasions is immaterial.

But respondent contends that when the L. & N. car came to rest after the failure of the coupler "its capacity for doing harm was spent." The second movement, it argues, in which the coupling worked perfectly, started a new chain of events resulting in Carter's injury.

We cannot agree that the various events were so divisible. This was a two-pronged complaint, alleging the right to recover under the Safety Appliance Act and the Federal Employers' Liability Act. In this situation the test of causal relation stated in the Employers' Liability Act is applicable, the violation of the Appliance Act supplying the wrongful act necessary to ground liability under the F. E. L. A. See *Moore* v. *Chesapeake & Ohio R. Co.,* 291 U. S. 205, 216 (1934); *O'Donnell* v. *Elgin, Joliet & Eastern R. Co., supra; Coray* v. *Southern Pacific Co.,* 335 U. S. 520 (1949). Sometimes that violation is described as "negligence per se," H. R. Rep. No. 1386, 60th Cong., 1st Sess., p. 6; *San Antonio & A. P. R. Co.* v. *Wagner,* 241 U. S. 476, 484 (1916); but we have made clear in the *O'Donnell* case that that term is a confusing label for what is simply a violation of an absolute duty.

Once the violation is established, only causal relation is in issue. And Congress has directed liability if the

---

[3] See *Myers* v. *Reading Co.,* 331 U. S. 477, 483 (1947).

Respondent conceded, in opposing certiorari, that "the Safety Appliance Act was violated— . . . a coupling failed to couple on impact . . . ." That statement is apparently abandoned now, for the argument is that Carter set the coupler improperly. On the record before us it is clear that that is a jury question.

injury resulted "in whole or in part" from defendant's negligence or its violation of the Safety Appliance Act. We made clear in *Coray* v. *Southern Pacific Co., supra,* 335 U. S. at 523, that if the jury determines that the defendant's breach is "a contributory proximate cause" of injury, it may find for the plaintiff. See also *Union Pacific R. Co.* v. *Hadley,* 246 U. S. 330, 333 (1918); *Spokane & I. E. R. Co.* v. *Campbell,* 241 U. S. 497, 510 (1916).

Certainly there was evidence upon which a jury could find a causal relation between the failure to couple, the action of petitioner in running and stopping the rolling car, the engineer's justified assumption that the car had coupled when in fact it had failed to do so, and the continued movement of the train into the standing car, thus causing injury. See *Louisville & Nashville R. Co.* v. *Layton,* 243 U. S. 617 (1917); *Erie R. Co.* v. *Caldwell,* 264 F. 947 (1920). It was error to take this phase of the case from the jury.

*Second.* In ruling on petitioner's general negligence allegations the trial court fell into errors in its charge on contributory negligence[4] which occur so frequently that we will discuss them briefly. The charge is replete with phrases such as, "if you should find his [the petitioner's] own negligence was the proximate cause of whatever injury followed," the verdict must be for the respondent. With proper explanations, the court could have advised the jury that if petitioner's own negligence was the *sole* proximate cause of his injury, the verdict must be for respondent; but here the court again and again used such

---

[4] Our ruling here, of course, is directed at the trial court's charge on the petitioner's general negligence allegations. In violations of the Safety Appliance Act, no employee "shall be held to have been guilty of contributory negligence . . . ," 45 U. S. C. § 53, even for purposes of jury comparison. See *Coray* v. *Southern Pacific Co., supra.*

phrases as "if you should find his injury was directly or proximately caused by his own negligence," verdict must be for the railroad; and if you find "that his own negligence in no manner contributed to his injury"; "if you find . . . he was not negligent in any manner," the verdict must be for the plaintiff. We are unable to say such error was inconsequential. It violates the direct command of the Act of Congress. The "fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee . . . ." 35 Stat. 66, 45 U. S. C. § 53.[5] The negligence of the petitioner and that of the railroad should have been submitted to the

[5] Respondent argues that the Court remedied these errors after the oral charge had been given. We see no basis for that conclusion; the Court's action at that time was equivocal at best. The record recites the following:

"Mr. Pettus: Your Honor said if the plaintiff negligently caused his own injury, he could not recover. If the plaintiff by his negligence proximately caused his injury, he couldn't recover. Your Honor omitted 'sole'. In other words, if the plaintiff's negligence were the sole proximate cause, of course he couldn't recover.

"The Court: I will modify it to that extent. That simply means whether his own negligence was wholly responsible for his injury. If he is totally responsible, it would not make any difference as to negligence on the other side. . . .

"Mr. Pettus: We except to that latter part of your Honor's charge, 'would not make any difference on the other side.' We except to your Honor's charge that there was no defect in the hand brake, and also that portion of your Honor's charge that the plaintiff negligently set the hand brake, automatic coupling, and that was the proximate cause, without limiting it and saying it was the sole cause. In other words, was the proximate cause and not the sole cause. And then when your Honor was reading a written charge you said, in explanation, 'if the direct or proximate cause of plaintiff's own negligence,' and we except to that on the ground you did not say it must be the sole cause. We asked you an explanatory charge on that rule, if

jury, and in the light of this comparison a verdict reached that would do justice to all concerned. See *Tiller* v. *Atlantic Coast Line R. Co.*, 318 U. S. 54, 65 (1943).

The judgment is reversed and the case remanded for further proceedings in conformity with this opinion.

*Reversed.*

MR. JUSTICE REED dissents. In his view the failure of the automatic coupler to fasten on the first impact was not a proximate cause of the injury to petitioner. The failure did not contribute to the injury. That was caused by a too rapid coupling on the second effort.

Any deficiency in the instructions on negligence was cured by the court's modification of the instruction set out in note 5 of the opinion.

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

MR. JUSTICE FRANKFURTER.

Properly deeming industrial injuries inherently incidental to the conduct of modern industry, the law throughout the United States deals with them as such on the principle of insurance, not on the principle of negligence. The workmen's compensation laws thereby eliminated all the inevitably casuistic efforts to apply the concepts of "negligence," "proximate cause" and "contributory negligence" which served well enough employer-employee relations which have long since ceased. To apply the concepts of "negligence" and "proximate cause"

---

your Honor will give it at this time. I think your Honor overlooked charging it. If you will look at the rule.

"The Court: I think I will refuse this charge.

"Mr. Pettus: Refuse it?

"The Court: Yes. Give you an exception."

to the infinite complexities of modern industry is like catching butterflies without a net. But as to injuries suffered by railroad employees, courts and juries must continue to apply these concepts so long as the anachronistic Federal Employers' Liability Act remains.

Happily, however, Congress has not said that all the casuistries about "proximate cause" must be adjudicated by three courts. As an indispensable requirement of the functioning of this Court, Congress has left it to our discretion to decide whether, after a District Court and a Court of Appeals or two courts of a State have wrestled with the phantoms of proximate cause, this Court should have another go at it. A law by which injuries sustained by railroad employees in the course of their employment are compensated on the basis of negligence is bound to work injustice, and hardships in particular situations naturally present humane opportunities for alleviation. But no amount of stretching of negligence concepts can change the Act's character and the mischief that it does as a cruel survival of a by-gone era. And it is inconsistent with the functions of this Court to yield to such temptations by taking cases in which a conscientious appellate court felt compelled to decide against a railroad employee on its justifiable application of the dubious requirements of negligence, even though a contrary view might also be taken. Where a case involves no general principle requiring pronouncement but merely its own unique circumstances, such alleviation is inconsistent with the criteria, set forth in Rule 38, governing this Court's discretion in granting a writ of certiorari.

The argument at the bar of this Court and the opinions dealing with the merits leave no room for doubt that no general principle is here involved. There is merely a difference in the application of professedly settled rules

to the circumstances of this particular case. Three experienced judges of the Court of Appeals have found no error in the judgment that was rendered for the defendant. The division in this Court underlines the fact that the three judges below could not unreasonably have entertained the view they did. I am not remotely suggesting that this Court has not reached the right result, if it had to deal with the merits. For me it is decisive that, since the merits involve merely evaluation of the unique facts in the record, the case does not fall within the proper business of the Court.

I would therefore dismiss the writ as improvidently granted. By not doing so, the Court encourages petitions of this character instead of discouraging them. The Court should save its energy for cases it necessarily must adjudicate in order to adjudicate them with due regard for the needs of the deliberative process. The only effective way to respect these considerations is to cease acquiescence in their disregard. See *Wilkerson* v. *McCarthy,* 336 U. S. 53, 64 (concurring opinion).