## GIVENS v. MISSOURI-KANSAS-TEXAS R. CO. OF TEXAS.

No. 13697.

United States Court of Appeals, Fifth Circuit.

March 22, 1952.

Mandate Amended May 27, 1952.

See 196 F.2d 905

226

Maurice M. Davis, Fort Worth, Tex., George S. King, Houston, Tex., for appellant.

William J. Boswell, Waco, Tex., for appellee.

Before BORAH, RUSSELL and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Appellant, (hereafter referred to as plaintiff) filed a two count complaint against the appellee railroad company (hereafter referred to as defendant), the first count charging a violation of the Federal Boiler Inspection Act,[1] and the second count charging negligence under the Federal Employers' Liability Act.[2]

At or about daylight on the morning of January 31, 1949, the defendant's passenger train No. 6, north bound from San Antonio, Texas, destined for St. Louis, Missouri, broke down in zero weather near Hewitt, McLennan County, Texas, due to one of the driving wheel tires[3] coming off and the other driving wheel tires slipping to such an extent that it was impossible for the train to proceed. The train was a regular passenger train well filled with passengers, and consisting of a steam locomotive and thirteen cars, being coaches, baggage cars and Pullmans. The plaintiff was the only brakeman assigned to the train, and because of the breakdown he was ordered to a point approximately three-fourths miles to the rear of said train for the purpose of flagging and protecting the rear of the train. There he remained for several hours as a result of which he sustained severe frost bite to the left foot and mild frost bite to the right foot with consequent injuries extending up into his legs.

Trial was to a jury on special issues, on one of which the jury found that plaintiff suffered $12,000.00 damages. Each side moved for judgment on the verdict and the district court entered judgment in favor of defendant, that plaintiff take nothing, from which judgment plaintiff perfected this appeal.

The plaintiff, appellant, makes two specifications of error as follows:

"First:

"The trial court committed error prejudicial to plaintiff in refusing to enter judgment for plaintiff on the verdict of the jury since the undisputed evidence showed that

1. 45 U.S.C.A. § 23.

2. 45 U.S.C.A. § 51 et seq.

3. A "tire", according to the evidence, is the outer part of the wheel that rolls on the rail.

the defendant had violated the Boiler Inspection Act, and the jury having found in response to Special Issue No. 1 that the engine break down was the proximate cause of plaintiff's injuries and damage.

"Second:

"The trial court erred, and this was prejudicial to plaintiff, in failing and refusing to charge the jury on the law applicable to the Boiler Inspection Act."

The testimony as to the occurrence of the break down came from the defendant's employees. The engineer testified that the tires were caused to slip by the brakes going on, that that was not due to an application put on the brakes, and that he did not know what caused the brakes to go on.[4]

The defendant's machinist, who examined the engine prior to its leaving San Antonio and found it in good condition, testified as an expert that the only thing that could have caused the tires to slip was their being heated either by the engineer opening his throttle wide open on a heavy pull or by the brakes going on, that sometimes the brakes have a tendency to creep on while the train is running, caused by leakage of the train line.

The train conductor testified that he walked to the engine after the breakdown and found the right hand back tire off and resting down on the tracks and the rim of the wheel setting on the rail.[5] The conductor thereupon walked to Hewitt, a distance of a little more than two miles, where he sent a message to the dispatcher. A relief engine and relief crew and mechanics were dispatched from Waco to remove the train and reset the tires. The engine on which the tires had slipped was not thereafter used to move the train as a relief engine was substituted for it at the point of breakdown.

Estimates of the time of breakdown varied from 6:30 to 7:45 A.M. The plaintiff remained at his flagging position until he was relieved from duty except for a temporary relief during which time he went to the train for breakfast. Estimates of the time of his final relief from duty varied from 11:15 A.M. to 1:30 P.M.

The case was submitted to the jury on forty special issues, and the only law given in charge to the jury was that defining certain words and phrases, such as ordinary care, negligence and proximate cause. No charge or instruction was given as to the law under the Boiler Inspection Act or the Federal Employers' Liability Act. Special issues numbered 1 and 2 had to do with the Boiler Inspection Act. In response to Special Issue No. 1 the jury found that the engine breakdown on the occasion in question was a proximate cause of the injuries sustained by plaintiff to his feet and legs. Special Issue Number 2 was as follows:

"Special Issue No. 2.

"Do you find from a preponderance of the evidence herein that the defendant on the occasion in question used on its line a locomotive, which locomotive, or any of the parts, or appurtenances thereof were not in proper condition and safe to operate in the service to which the same were put without unnecessary peril to life or limb?

"You will answer, 'It was safe to operate as above inquired about,' or 'It was not safe to operate as above inquired about.'

---

4. "Q. Do you or not, yourself, know what caused the break down? A. No, I don't know. I knew the tires slipped, but I don't know whether that caused it or not.

"Q. You don't know what caused the tires to slip? A. No, I don't know for sure. We know the brakes did it, but what caused the brakes to go on, I don't know.

"Q. Did you or not just testify the brakes going on caused the tires to slip? A. Yes, that caused them to slip.

"Q. Was that or not due to an application put on the brakes of the engine? A. No, it wasn't."

5. "Q. When this break-down occurred, did you inspect the engine, Mr. Camp? A. Yes, sir, I looked around, and went all around it, and the tires were all slipped.

"Q. Did you notice anything except the tires on the thing? A. That was all, and that was plenty.

"Q. That was enough for you? A. That was plenty for me."

"Answer: It was safe to operate as above inquired about."

Most of the remaining issues had to do with negligence and in response thereto both plaintiff and defendant were acquitted of any acts of negligence and the plaintiff's injuries were declared the result of an unavoidable accident. In response to special issue No. 39, the jury found that reasonable compensation for the plaintiff's injuries would be the sum of $12,000.00.

The claimed violation of the Boiler Inspection Act is predicated upon that portion of Section 23 of Title 45, U.S.C.A., which provides that: "It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb * * *."

As to that provision, the Supreme Court has said: "Negligence is not the basis for liability under the Act. Instead it 'imposes upon the carrier an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate * * * without unnecessary peril to life or limb.'" Lilly v. Grand Trunk Western Railroad Co., 317 U.S. 481, 485, 63 S.Ct. 347, 351, 87 L.Ed. 411.

The Court went on to say that the Boiler Inspection Act, like the Safety Appliance Act, "is to be liberally construed in the light of its prime purpose, the protection of employees and others by requiring the use of safe equipment."

Plaintiff excepted and objected to the whole of the Court's charge for the reason that nowhere therein was the plaintiff's cause of action on the violation of the Boiler Inspection Act separated from the cause of action based upon negligence, and because the Court failed to instruct the jury on the law of the Boiler Inspection Act and the mandatory duties devolving upon the defendant thereunder. Further objection was made by plaintiff to Special Issue No. 2 upon the ground that instead of charging the jury as to the law under the Boiler Inspection Act it submitted to the jury questions of law, as well as questions of fact and in effect asked the jury to interpret the Act instead of answering ultimate fact questions.

We do not think that Special Issue No. 2 was accompanied by "such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon (such) issue." Federal Rule of Civil Procedure, rule 49, 28 U.S.C. The expression "on the occasion in question", as used in that issue, would hardly convey to the minds of the jury that the defendant's duty to maintain its locomotive and the parts and appurtenances thereof in proper condition and safe to operate without unnecessary peril to life or limb was a duty continuing so long as the locomotive was in use on the lines of the defendant and extending certainly up to the time of the breakdown. There had been evidence that the engine was in good condition when it left San Antonio at the beginning of this trip, and the jury's response to Special Issue No. 2 may have been based upon that evidence. It is clear too that the jury had no idea that the defendant was under any absolute or mandatory duty for before it would respond to the issue having to do with damages it inquired of the Court: "Are we to make answer in dollars and cents for his injuries sustained on this occasion even though we think the accident was unavoidable and not the result of any fault of the railroad?" The plaintiff makes the further contention that the finding in response to Special Issue No. 2 is contrary to the undisputed evidence showing that the engine and its driving wheels actually did break down.

In instances where the requirements of the Safety Appliance Act are specific and definite, such as the failure of a coupler to couple automatically by impact,[6] the breaking of a coupler in a switching op-

---

6.  Carter v. Atlanta & St. Andrews Bay Ry. Co., 338 U.S. 430, 70 S.Ct. 226, 94 L.Ed. 236.

eration,[7] the sudden stopping of a train because of defective air brakes,[8] it has been held that the mere failure of the appliance to function was a violation of the Act as a matter of law.

◼ The Interstate Commerce Commission has promulgated a number of particular minimal requirements under the Boiler Inspection Act.[9] A violation of any of such particular requirements is a violation of the Boiler Inspection Act.[10]

◼ On the other hand, the phrases "in proper condition", "safe to operate", and "without unnecessary peril to life or limb", as used in the provisions here pertinent, are general, and the railroad company is left with the discretion to decide on the type of construction of the locomotive and the particular appurtenances necessary to be installed.[11]

"The act required a condition which would permit use of the locomotive without unnecessary danger. It left to the carrier the choice of means to be employed to effect that *result*." Baltimore & Ohio R. Co. v. Groeger, 266 U.S. 521, 530, 45 S.Ct. 169, 173, 69 L.Ed. 419. (Emphasis supplied.)

◼ The generality of the requirements of this portion of the Boiler Inspection Act may, in cases falling short of a breakdown or complete failure to function, call into exercise the discretion and judgment of a jury in weighing the facts and circumstances to determine whether the Act has been violated. In this case, however, the undisputed evidence goes so far as to show that the *result* required by the Act was not effected. The locomotive while in use on the lines of the carrier broke down and failed to function. That is likewise true as to the driving wheels which propelled the locomotive. A locomotive cannot be in proper condition or safe to operate in the service to which it is put if it will not operate at all. Driving wheels are necessary parts or appurtenances of a locomotive and if those driving wheels will not function they cannot be said to be in proper condition and safe to operate in the service to which they are put. A locomotive with such defective driving wheels cannot be employed in the active service of the carrier at all, let alone without unnecessary peril to life or limb. We think that the slipping tires and consequent breakdown of the locomotive while being used on the defendant's line established a violation of the Boiler Inspection Act as a matter of law.

That is not to say that every accident bringing about a breakdown of a locomotive or its parts or appurtenances would give rise to a cause of action under the Boiler Inspection Act. The accident might be the efficient cause of the resulting injuries, and the failure of the engine or its parts might be the result of or incidental to the accident. The condition of the apparatus while in use on the carrier's line might have no real connection with the resulting injuries. We do not mean to imply that the breakdown would not have constituted a violation of the Boiler Inspection Act if it had been caused by negligent operation of the train on the part of some employee other than the plaintiff. However, the defendant established to the satisfaction of the jury that the breakdown was not the result of negligence on the part of any of its employees, but was an unavoidable accident.

In the cases of actual boiler explosion relied upon by the defendant it was within the province of the jury to find that the fault of the deceased in failing properly to operate the engine [12] or in negligently allowing the water in the boiler to become

7. O'Donnel v. Elgin J. & E. Ry. Co., 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187.

8. Coray v. Southern Pacific Co., 335 U.S. 520, 69 S.Ct. 275, 93 L.Ed. 208.

9. Law, Rules and Instructions for Inspection and Testing of Steam Locomotives and Tenders and Their Appurtenances, Interstate Commerce Commission, Bureau of Locomotive Inspection, U. S. Government Printing Office, 1947.

10. Lilly v. Grand Trunk R. Co., 317 U.S. 481, 488, 63 S.Ct. 347, 87 L.Ed. 411.

11. Baltimore & Ohio R. Co. v. Groeger, 266 U.S. 521, 530, 45 S.Ct. 169, 69 L.Ed. 419; Urie v. Thompson, 337 U.S. 163, 190, 69 S.Ct. 1018, 93 L.Ed. 1282.

12. Baltimore & Ohio R. Co. v. Groeger, 266 U.S. 521, 527, 45 S.Ct. 169, 69 L. Ed. 419.

too low,[13] rather than any condition of the boiler, caused the explosion. In the present case, there is no claim that the plaintiff brakeman's duties had any connection with causing the breakdown of the engine or its wheels. The economic loss from an accident, not the fault either of the railroad or of the injured employee, must fall on someone, and in cases of violation of the Boiler Inspection Act the Congress has declared that such loss must be borne by the railroad.

If the slipping of the tires was caused by defective brakes then under the holding in Coray v. Southern Pacific Co., 335 U.S. 520, 69 S.Ct. 275, 93 L.Ed. 208, there was a violation of the Boiler Inspection Act. If the slipping of the tires and the consequent breakdown of the engine came about from any other cause not the fault of the plaintiff (and there is no contention of any such fault on his part) such breakdown or failure of the engine or of one of its necessary parts or appurtenances to function while in use on the lines of the carrier was itself a violation of the Boiler Inspection Act.

■ It follows that the plaintiff was entitled to a recovery if such violation was the sole or a contributory proximate cause of plaintiff's injuries.[14] The jury so found in this case in response to special issue No. 1. It is settled that both the Federal Employers' Liability Act and the Boiler Inspection Act include injuries in the nature of occupational diseases.[15] The plaintiff was ordered into his hazardous position because of the defendant's violation of the Boiler Inspection Act and clearly, under the evidence, the jury was justified in finding that the breakdown of the engine was a contributory proximate cause of plaintiff's injuries.[16]

The district court erred in overruling the plaintiff's motion for judgment in the amount of $12,000.00, and the cause is reversed with instructions to enter such a judgment on the verdict of the jury.

Reversed.

13. Great Northern Ry. Co. v. Donaldson, 246 U.S. 121, 123, 124, 38 S.Ct. 230, 62 L.Ed. 616.

14. Coray v. Southern Pacific Co., 335 U.S. 520, 69 S.Ct. 275, 93 L.Ed. 208; Carter v. Atlanta & St. Andrews Bay Ry. Co.,

338 U.S. 430, 70 S.Ct. 226, 94 L.Ed. 236.

15. Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282.

16. See cases cited in Note 14, supra. See also Pullman Co. v. Montimore, 5 Cir., 17 F.2d 2.