**Pearson B. GARRETT, Jr., Appellant,**

v.

**Ellis CAMPBELL, Jr., District Director of Internal Revenue, Appellee.**

**No. 22269.**

United States Court of Appeals
Fifth Circuit.

May 5, 1966.

Ethan B. Stroud, John R. Feather, Dallas, Tex., for appellant.

Barefoot Sanders, U. S. Atty., Dallas Tex., John B. Jones, Jr., Act. Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Myron C. Baum, C. Moxley Featherston, Attys., Dept. of Justice, Washington, D. C., Melvin M. Diggs, U. S. Atty., of counsel, for appellee.

Before JONES and BROWN, Circuit Judges, and DYER, District Judge.

JOHN R. BROWN, Circuit Judge:

This appeal arises out of a jury verdict for the Government in Taxpayer's refund suit. In April 1957 the Taxpayer[1] received 40,000 shares of stock in Quinta Corporation. In his 1957 tax return, however, Taxpayer reported no income from the receipt of this stock. The Commissioner determined a deficiency on the ground that the shares were ordinary income when received in 1957 as payment for services rendered by Taxpayer. The Taxpayer's suit for refund asserted that the shares were received in exchange for a capital asset which he had acquired in August 1956 and had held for more than six months and thus constituted long-term capital gain. The capital asset supposedly ex-changed for the stock were mineral interests in certain uranium lands now belonging to Quinta. Taxpayer contended that he acquired this mineral interest in 1956 either in his individual capacity as a locator of unclaimed mineral lands or as a party to a sharing agreement, or in the form of an interest in a partnership or joint venture. In the "alternative," Taxpayer contended that he received his interest in 1956 as an employee of, and in compensation for services rendered to, one Richard Bokum. The jury through a general verdict for the Government presumably accepted the Commissioner's view.

Taxpayer claims here that we should reverse for two errors committed by the trial Court in its charge to the jury: (1) the Court placed an impossible burden of proof on Taxpayer by couching three critical sentences of the charge in ambiguous, unintelligible, and incomprehensible language; (2) the Court failed to charge the jury in regard to Taxpayer's "alternative" contention as set out in the pretrial orders.

Of these alleged errors only the first has any substance. Although the trial Court's charge leaves something to be desired in terms of clarity, upon a review of the entire record we find no reversible error. We thus affirm.

The undisputed, underlying facts can be briefly summarized. In 1956 the Taxpayer was engaged in exploring and prospecting for uranium properties in the State of New Mexico. In the spring of that year, Taxpayer learned that certain land in New Mexico, which was owned by the Federal Government and which had been withdrawn from private prospecting by the Atomic Energy Commission, would be opened to private prospectors on August 31, 1956. This land was known as the "Ambrosia Lake area" or the "withdrawn lands." For several years prior to this time Taxpayer had worked for or with[2] Richard Bokum as a

1. Pearson B. Garrett.

2. Even as to these earlier ventures the evidence is conflicting as to whether Taxpayer was an employee or partner of Bokum.

geologist or engineer. Bokum also learned of the future availability of the Ambrosia Lake area and decided to lay claim to some of the land. He informed some of the syndicate of persons with whom he had dealt in other transactions, and they agreed to provide financing in return for a 75% share. Bokum was to have a 25% share. It was contemplated that any properties attained would ultimately be placed in a corporation with the respective shares of the participants being represented by corporate stock.

Bokum, wishing to use Taxpayer's technical skill in locating and staking the Ambrosia properties, offered him either a salary or a share in the venture in return for his services. Taxpayer chose to share instead of taking a salary. Under an oral agreement, he was to receive his expenses plus an interest in what was acquired as a result of the venture.[3]

During the late spring and summer of 1956, Taxpayer actively engaged in prospecting the Ambrosia area and in preparing for staking the claims. He set up a complete program designed to ensure that the staking would be effective and sufficient. He contacted the Atomic Energy Commission for maps and information as to the location of the area, he examined the Federal Register, text books and New Mexico law and had conversations with an attorney to establish the correct procedures to be followed, and he hired about 200 men and sufficient heavy equipment to permit the validation of the claims on opening day and carefully instructed the men in the procedures to be followed.

On August 31, 1956, at 10:00 a. m., the Ambrosia area was thrown open and Taxpayer's crew raced to stake the claims. Over 100 claims were staked by them. By prior agreement and preparation, the claims were staked in the names of Bokum and Garrett—location notices bearing their names were placed on posts and the claims were filed with the appropriate local authority.

Soon thereafter, working for the same group of investors, Taxpayer prospected and staked claims on at least one other mineral location. Late in 1956 and early in 1957 he worked to locate and acquire the Church Rock properties for the corporation which was to be formed.

In December of 1956 the parties began to consider transferring the properties to a corporation. An existing corporation controlled by Bokum and several other investors was used and its name was changed to Quinta Corporation. The Ambrosia and Church Rock properties were transferred to it either late in 1956 or early in 1957 and the stock was issued. Bokum became entitled to 150,000 shares in relation to the Ambrosia area and 470,000 shares in relation to the Church Rock properties. The Taxpayer received 40,000 shares evidenced by a stock certificate issued to him in early April, 1957. At the time he received the stock, he executed a quitclaim deed of any interest he had in the Ambrosia properties. The shares received

---

3. As to the broad general terms of this oral agreement there was no dispute. Both Taxpayer and Bokum testified that the former was to receive a "share" or "interest" vis-a-vis a salary. But as to what Taxpayer was to share in—the mineral interests acquired upon staking, a partnership, a joint venture, or stock issued by Quinta—and as to the conditions upon which he was to receive a share—when, from whom, by whom determined, in what capacity—there was much disagreement. See pp. 5–6, infra.

Others who worked for Bokum on the project—secretaries, an attorney and several persons who aided in staking the claims—were also offered the choice of salary or a share in what the undertaking produced and chose to share in return for their services. No question, or for that matter suggestion, has arisen as to the application of G.C.M. 22730, 1941–1 Cum.Bull. 214, to Taxpayer or any of these other enterprises Cf. James A. Lewis Eng'r, Inc. v. Commissioner, 5 Cir., 1964, 339 F.2d 706. See generally Fiske, Federation Taxation of Oil and Gas Transactions 16–17, 175–176 (1958) ; Miller, Oil and Gas—Federal Income Taxation 24–29, 139, 179, 187, 195 (3d ed. 1957).

by Taxpayer were part of those allotted to Bokum.

At the trial, as would be expected, most of the controversy centered on the terms and effect of the 1956 oral agreement between Taxpayer and Bokum as it bore on the questions of whether and when Taxpayer acquired an interest in the Ambrosia Lake claims. Taxpayer, his own principal witness, repeatedly adhered to his conviction that he acquired an interest upon the completion of staking and filing the claims, that he was at all relevant times a partner, not employee, of Bokum. Bokum's difference at first appears to have been slight. He tended to agree with Taxpayer's theory of an interest for he testified that Taxpayer's compensation was to come from a share in the properties.[4] But while the testimony about an "interest" seemed to coincide, there was quite, indeed a decisive, difference. Bokum was emphatic that Taxpayer was an employee, not a co-venturer. Bokum's version was that he alone was to determine what share would fairly compensate Taxpayer for his services, that he had reserved the right to judge what percentage Taxpayer was to receive because at the outset he could not foretell how much property would be involved or acquired. In short, according to Bokum, if Bokum (or his group) acquired anything, then Taxpayer was to share in that if Bokum determined what the share should be and if Bokum then gave it to Taxpayer.[5] If credited, this was, of course, a long way from the "receipt" by Taxpayer, or the promise to transfer to him an interest in property.

## I.

Taxpayer's first complaint is that the following portions of the Court's charge to the jury are incomprehensible and thus placed an impossible burden on him:

"The burden is upon the plaintiff to show by a preponderance of the evidence that the plaintiff acquired an interest in the mineral and uranium properties in New Mexico, that such interest was held for more than six months and that such interest was sold or exchanged for 40,000 shares of stock in the Quinta Corporation *and not for wages as an employee.*"

"*   *   *

"If you find from a preponderance of the evidence that the plaintiff acquired an interest in the mineral and uranium properties in New Mexico which he held for more than six months and sold or exchanged for 40,000 shares of stock in Quinta Corporation *and not as wages as an employee of Bokum or Quinta Corporation,* you will find for the plaintiff.

"If you fail to find by a preponderance of the evidence that the plaintiff acquired an interest in the mineral and uranium properties in New Mexico which he held for more than six months and sold or exchanged for stock in Quinta Corporation *and not for wages as an employee of Bokum or Quinta*

---

4. See note 3, supra. To the jury the credibility of Bokum's testimony, taken by deposition, could have been greatly shaken in view of his admissions that at the time he was under criminal and civil tax investigation by the IRS, in part in connection with his deduction as a business expense of the 40,000 shares issued to Taxpayer.

5. Bolstering Bokum's version, the Government introduced three documents. First, there were two memoranda written by Bokum on September 14, 1956, and January 17, 1957—the latter of which was addressed to Taxpayer, but neither of which was shown to have been seen by Taxpayer—which stated that Taxpayer was to receive 40,000 shares from Bokum's shares for services rendered. There was no mention of mineral interests as such. Second, there was a copy of the prospectus issued by Quinta which recited that in April 1957 Bokum personally transferred 40,000 shares to Taxpayer in consideration of services rendered. Third, there was a transcript of state court proceedings in a New Mexico lawsuit filed against Bokum and Taxpayer. Taxpayer there had testified that he was an employee of Bokum in connection with acquiring the Ambrosia Lake properties, and the settlement agreement which terminated the litigation also recited that Taxpayer was an employee.

*Corporation,* your verdict shall be for the defendant." (Emphasis added.)

Taxpayer contends that there is nothing in these three sentences which the dangling, italicized clause can possibly modify. To illustrate this point Taxpayer on argument used three charts depicting alternative diagrams of the syntax of these sentences. With this syntactical advocacy, the sentences verbally reconstructed might have a first,[6] or second,[7] or third [8] reading. The first two alternatives suggested by Taxpayer render the sentences incomprehensible. The third is worse. Though comprehensible, such instruction, argues the Taxpayer, introduces a legally irrelevant consideration which could have misled the jury. If Taxpayer acquired a mineral interest in 1956 which he held for more than six months and then exchanged for shares of Quinta, we agree with the Taxpayer that for purposes of this case—the Government seeking to tax the shares as compensation in 1957 and not the mineral interest as compensation in 1956, or 1957 for that matter—it is absolutely immaterial how Taxpayer acquired the mineral interest. He may have acquired the mineral interest "for wages as an employee" and still be entitled to long term capital gain treatment upon the receipt of stock more than six months later in exchange for his mineral interest.[9]

Standing alone, these three critical instructions in the charge might well require reversal. But they do not stand alone. They cannot be isolated—taken out of the context of the remainder of the charge, the arguments of counsel, the kind of proof sought to be adduced, the comments of the trial Court—and judged solely from the standpoint of the diagraming grammarian. The charge must be viewed as a whole, in connection with the contentions aired by the parties in the Court below, and it must be viewed from the standpoint of the jury.[10] Even if a portion of the charge is technically imperfect, if the charge in general correctly instructs, then no harmful error has been committed. Messer v. L. B. Foster Co., 5 Cir., 1958, 254 F.2d 412. With these considerations in mind, we have no doubt that the jury clearly understood what was properly at issue in this case and was not misled by the awkward construction of the complained of sentences.

The proof of the pudding is again in the eating. Even if, from the vantage of contemplation which comes when the heat and smoke have gone and the dust settled, it is thought that what the Judge was saying made no—or incorrect—sense, it is certainly clear that no one thought so at the time. Taxpayer's counsel never, simply never, objected at trial

6. "The burden is upon the plaintiff to show * * * that such interest was held for more than six months [*and not for wages as an employee*] and that such interest was sold or exchanged for 40,000 shares of stock in * * * Quinta."

7. "The burden is upon the plaintiff to show * * * that such interest was held for more than six months and that *such interest was sold or exchanged [not for wages as an employee but]* for 40,000 shares of * * * Quinta."

8. "The burden is upon the plaintiff to show * * * that the plaintiff acquired an interest [*not for wages as an employee*] * * *, that such interest was held for more than six months and that such interest was sold or exchanged for 40,000 shares of * * * Quinta."

9. Of course, all this is closely related to Taxpayer's so-called "alternative" contention and his second assignment of error. See Part II, infra.

10. See, e. g., Forester v. Texas & P. Ry., 5 Cir., 1965, 338 F.2d 970 (per curiam), cert. denied, 381 U.S. 944, 85 S.Ct. 1785, 14 L.Ed.2d 708; Carter v. Atlanta & St. A. B. Ry., 5 Cir., 1948, 170 F.2d 719, 721, rev'd on other grounds, 1949, 338 U.S. 430, 70 S.Ct. 226, 94 L.Ed. 236; International Paper Co. v. Busby, 5 Cir., 1950, 182 F.2d 790, 792; Pasotex Pipe Line Co. v. Murray, 5 Cir., 1948, 168 F.2d 661, 663; Terminal R. Ass'n v. Fitzjohn, 8 Cir., 1948, 165 F.2d 473, 480, 1 A.L.R. 2d 290; Bush v. Louisville & N. R. R., 5 Cir., 1959, 260 F.2d 854, 857; Aetna Ins. Co. v. Paddock, 5 Cir., 1962, 301 F. 2d 807, 812; Eastern Air Lines, Inc. v. Silber, 5 Cir., 1963, 324 F.2d 38; Burns v. Travelers Ins. Co., 5 Cir., 1965, 344 F.2d 70, 73.

to the charge on the ground that it was ambiguous, incomprehensible, and unintelligible.[11] Of course, F.R.Civ.P. 51 condemns his attempt to register this objection in the first instance now on appeal.[12] If, to people who knew most what the case was all about, the charge did not appear sufficiently ambiguous as heard to elicit an objection at that time, there is no ground for reversal even though in the cold bare type of an appellate record it may seem quite ambiguous.[13]

Moreover, consideration of the entire record will demonstrate that failure to object did not flow from counsel's lack of hearing or discernment. What all heard did not sound wrong. It sounded all right to all.

We think that awkward as was its structure, both Judge and jury understood the instruction to say that

> "the burden is upon the plaintiff to show * * * that the plaintiff acquired an interest in the mineral and uranium properties in New Mexico, that such interest was held for more than six months and that such interest was sold or exchanged for 40,000 shares of * * * Quinta * * * and [such shares were received] not for wages as an employee."

Other portions of the charge,[14] the Court's outline of the case to the jury at the trial's outset,[15] and the opening state-

---

11. The only grounds on which Taxpayer objected to the charge were (1) that the Court's definition of an employee was too broad, (2) that the Court failed to instruct as to the consequences of a receipt of the mineral interest as an employee in 1956, and (3) that the Court refused to include all of Taxpayer's proposed instructions.

12. See, e. g., Williams v. National Sur. Corp., 5 Cir., 1958, 257 F.2d 771, 777; Atlantic Coast Line R. R. v. Gunter, 5 Cir., 1956, 229 F.2d 842, 845; Moore v. Louisville & N. R. R., 5 Cir., 1955, 223 F.2d 214; Burns v. Travelers Ins. Co., supra.

  Taxpayer argues, however, that this case is governed by our decisions in Wirtz v. International Harvester Co., 5 Cir., 1964, 331 F.2d 462, cert. denied, 379 U.S. 845, 85 S.Ct. 36, 13 L.Ed.2d 50, Mondshine v. Short, 5 Cir., 1952, 196 F.2d 606, and Government Employees Ins. Co. v. Davis, 5 Cir., 1959, 266 F.2d 760. The first two cases recognize that in an exceptional case where the error in the Court's charge is "basic, plain, and clear" (e. g., omission of an essential ingredient of cause of action, incorrect interpretation of statute affecting persons other than the immediate litigants), as opposed to a mere technical imperfection, the Appellate Court may reverse in spite of appellant's failure to object in accordance with Rule 51. See generally 2B Barron & Holtzoff, Federal Practice and Procedure § 1106 (Wright ed. 1961). This is simply not such an exceptional case. And Taxpayer gets no mileage from *Government Employees* for there the appellant had objected below to the trial Court's instructions.

13. See, e. g., Hoover v. United States, 5 Cir., 1966, 358 F.2d 87, 88 [April 1, 1966]; Kieffer v. Blue Seal Chem. Co., 3 Cir., 1952, 196 F.2d 614, 616.

14. Prior to the three challenged sentences, the Court instructed the jury:
  "Only the taxes for 1957 are involved.
  " * * *
  "The plaintiff contends that he acquired an interest in mineral and uranium properties in the State of New Mexico in 1956; that he obtained ownership and possession of these properties prior to September 14, 1956; that he held these properties in excess of seven months, that on or after April 6, 1957 he sold or exchanged these property interests for stock in Quinta Corporation.
  "The defendant contends that the plaintiff was an employee of Richard Bokum and that the stock acquired in Quinta Corporation in April 1957 was paid him as compensation for services he had rendered Richard Bokum as an employee of Richard Bokum.
  "The issue in this case is whether (a) the plaintiff acquired an interest in the mineral and uranium properties in New Mexico, (b) whether he held such mineral properties for more than six months, and (c) sold or exchanged them for 40,000 shares of Quinta stock *or whether such 40,000 shares of stock was paid him as compensation for services he had rendered as an employee.*" (Emphasis added.)

15. The Court initially explained the case to the jury in these terms:
  "The Plaintiff contends that he acquired an interest in mining properties in New Mexico, that he held those properties for a period of more than six

ments of both counsel [16] together demonstrate that the jury understood the Court's charge in the above fashion.

In the running advocacy of this trial, the issues were sharply drawn by Court, counsel, and witnesses. These lines of communication to the jury were not blocked by grammatical imperfection.

## II.

■ Taxpayer's second assignment of error, that the trial Court erred in refusing to charge the jury in connection with his "alternative" contention, is likewise without merit. In its pretrial order, the District Court noted Taxpayer's alternative contention:

"Plaintiff contends:

"(1) That he acquired a mineral interest in certain uranium lands * * *

> months, and that he sold that mining interest for stock in Quinta Corporation.
>
> "The Internal Revenue contends, and there is no controversy about the fact that he got the stock from Quinta Corporation, but *the controversy is over how he acquired that stock.*
>
> "The Internal Revenue says that *he received that stock as compensation as earnings of an employee* of a man by the name of Bokum. So, *the question is how he acquired the stock in Quinta Corporation.* Did he sell to Quinta Corporation a mining interest which he had acquired in New Mexico (5) or did he receive the stock for compensation as an employee of Mr. Bokum? If he received the stock for the mining interest, he gets his refund. If he received the stock as earnings, you must find for the Government." (Emphasis added.)

16. In his opening statement. Taxpayer's counsel said:
> "We will show to you further that Mr. Garrett held this claim or property right or interest in uranium property for a period of approximately seven months, at which time he sold or exchanged his property right for $40,000 worth of * * * Quinta Corporation stock, and that at that time, in April 1957, is the date on which he transferred or exchanged his property right in the minerals for $40,000 worth or 40,000 shares of stock in Quinta Corporation, and at that time, we contend and allege, that he was entitled to long term capital gains treatment on the sale."

prior to September 6, 1956; that he acquired these * * * either individually or as a participant in a sharing arrangement or as a partner in a joint venture; that he was not an employee at the time he acquired these mineral properties * * *.

"(2) In the alternative, Plaintiff contends that if he was an employee and received a property or mineral interest * * * for services, then this compensation was received in 1956 at the time the mineral claims were placed in his name, and not in 1957 at the time the mineral deeds were exchanged for stock in Quinta Corporation."

It is this alternative contention (2) which Taxpayer insists he was entitled to a jury charge on.[17] Properly analyzed, however,

> In outlining the Government's case, Government counsel stated:
> > "We're going to show that first Mr. Bokum got some interest in some mining properties, that he never conveyed this to Mr. Garrett; he never did anything at the time that would give this interest to Mr. Garrett. The evidence will show that it was never Mr. Garrett's property. * * * [Bokum] was going to give him these 40,000 shares of stock, and this, we're going to show, was for the work Mr. Garrett did, not as a partner but as an employee."

17. As seen from the opening statement of Taxpayer's counsel, note 16, supra, and his consistent effort in examining the witnesses to show that Taxpayer was never an employee of Bokum, Taxpayer never heavily relied on this "alternative" theory. Even his requested instructions did not embody this theory. To the Court's charge he did object "in the alternative * * * to a failure to instruct the Jury that *if* the Plaintiff received a property interest in the year 1956 for services and was considered * * * an 'employee' in the year 1956 and was paid or compensated in that year, that they should return a verdict for the Plaintiff, since the year 1956 is not in issue in this lawsuit." (Emphasis added.) Of course, the "if" was the big one in this case. But this aside, for the Court to have given Taxpayer's requested instruction would constitute error. Even had the jury found that Taxpayer was compensated by receipt of a property interest in 1956, it would still have to find that he received the stock in 1957 in exchange for this

this so-called alternative contention is not really an alternative contention at all. The Quinta stock was admittedly received in 1957. As a thing of value it constituted income under § 61, 26 U.S.C.A. § 61 (1958). It would escape taxation as ordinary income only if it were received in exchange for an asset. Taxpayer therefore had to be the owner of the mineral interests. Consequently, the real question in this case was not *why* Taxpayer received a mineral interest, but *whether* he received one and *when* (1956 or 1957) he received it. As far as his being entitled to long term-capital-gain treatment on the receipt of Quinta shares, it was absolutely immaterial as to how—whether as an employee or as a partner—Taxpayer acquired the asset which he supposedly exchanged for the shares. See note 9, supra, and accompanying text. And this immaterial consideration is the only thing that differentiates Taxpayer's "alternative" contention from his primary one. The charge given by the Court required Taxpayer to prove that (1) he acquired a mineral interest, (2) he held it for more than six months, (3) he exchanged it for shares in Quinta, and (4) he did not receive the shares as compensation. As such, it covered all the relevant issues in the case, and there was nothing to be gained by asking the jury whether Taxpayer's mineral interest was acquired as compensation. The Commissioner was not attempting to tax the receipt of a mineral interest as compensation, either in 1956 or 1957. He was attempting to tax the receipt of shares in 1957.

There is simply no merit to Taxpayer's second contention.

Affirmed.

interest and not as further compensation in 1957. The latter alternative would certainly be plausible in view of the fact that early in 1957 Taxpayer helped Quinta

acquire the Church Rock properties in which he at no time asserted he had a personal interest.