**CONRY v. BALTIMORE & O. R. CO.**

No. 10450.

United States Court of Appeals Third Circuit.

Argued Oct. 4, 1951.

Decided March 5, 1952.

Vincent M. Casey, Pittsburgh, Pa. (Margiotti & Casey, Pittsburgh, Pa., on the brief), for appellant.

Thomas Park Shearer, Pittsburgh, Pa. (A. M. Oliver, Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Plaintiff then about twenty-one years old was badly hurt as the result of being struck and run over by one of the defendant's freight trains. The point of impact was approximately 75 to 100 feet west of the 9th Street crossing of defendant's tracks in the Borough of Braddock, Pennsylvania. Just prior to being hit he was lying unconscious within the lines of the track, with his right leg over the south rail. In the negligence action that followed, the jury rendered a verdict in his favor in the sum of $20,000. Motions by defendant railroad for judgment notwithstanding the verdict and for a new trial were denied by the trial judge[1] and the railroad appeals. The case is in the federal court because of the diverse citizenship of the parties. Pennsylvania law is therefore applicable to the merits of the controversy.

There was testimony that on August 8, 1947 about 12:30 A.M. while plaintiff was crossing defendant's tracks at the public intersection at 9th Street he stepped into a hole near the first rail of the third set of tracks. This caused him to fall forward and strike his head. Immediately thereafter he was in a dazed condition with the right side of his head covered with blood. He states, "I started to raise up to a sitting position. That's all I remember." At approximately 2:13 A.M. that same morning an object which later proved to be appellee was seen on appellant's tracks approximately 75 to 100 feet west of the 9th Street crossing. Conry's thought is that after his

---

1. D.C., 95 F.Supp. 846.

fall he had wandered along the railroad tracks west of 9th Street and fallen across them at the point where he was observed. Lannis, the head brakeman on the above mentioned train which was moving east stated that he saw ahead of the train at a distance of from 240 to 250 feet what he thought at first was a pile of white sand. Continuing to watch it as the train drew closer, he testified that at 80 feet he " * * saw that it was the body of a person." He signalled for an emergency stop but by the time the train was at a standstill the engine tender which was leading had passed over appellee who suffered a traumatic amputation of his right leg, a fractured skull and other injuries. The train moved approximately 150 feet from where Lannis identified Conry as a human being before coming to a complete halt. The speed of the train was estimated variously from six to twelve miles an hour. The railroad employees testified that the stop was a very good one considering the circumstances. According to appellee, he did not regain consciousness from the time he struck his head at the crossing until later the same day or the following day at the Braddock General Hospital. Witnesses for the plaintiff testified to the existence of the particular hole in the crossing which caused plaintiff's fall for at least six months prior to the accident, and on the date of the accident.

At the trial two separate avenues for recovery were followed by the plaintiff. He contended that the negligence of the railroad in maintaining the 9th Street crossing caused him to there fall and that as a result of the fall, in a dazed condition, he wandered down defendant's tracks where he was later struck and run over by the tender. Under that theory all of Conry's injuries were the direct consequence of his fall at the crossing. Quite independent of that fall Conry also asserted that the later striking of him by the tender was a distinct act of wanton negligence by the railroad and therefore, even though it were assumed he was a trespasser at that time, he could recover for the injuries he received in that second accident.

The trial judge in his charge did not differentiate between the two negligence propositions. He instructed the jury that in order for the plaintiff to obtain a verdict he had to prove not only negligence of the defendant at the crossing but also that the defendant was guilty of wanton negligence in striking him with the tender.[2] In other words, adopting plaintiff's version of the facts including breach of a legal duty at the crossing, the court in effect ruled that the railroad still owed him no higher duty than it owed to a trespasser. This placed too high a burden on the plaintiff under his description of the occurrence. Whether the original alleged negligence of the defendant at the crossing was the proximate cause of his being struck and run over by defendant's train[3] should have been a jury question subject to proof of the railroad's duty to maintain the crossing in reasonably safe condition as below noted.[4] But we must take this case as it

---

2. As the district judge said in his opinion denying a new trial, D.C., 95 F. Supp. 846, 851: "Since under the testimony the jury could justifiably find the defendant was negligent in the maintenance of said crossing, and that as a result thereof the plaintiff became in an unconscious or dazed condition and placed on the tracks of the defendant some one hundred feet west of the crossing, it became obligatory for the Court to charge on wanton negligence."

3. Conry's testimony is positive that he sustained some injury, primarily to his head, when he fell at the crossing. His recovery for that injury was in no way dependent on the later tender accident.

There should have been a special instruction taking care of this branch of the trial.

4. In charging the jury regarding the fall at the crossing the judge did say that the railroad had the duty of maintaining the crossing in reasonably safe condition. Under Pennsylvania law it is necessary that there be proof of that duty and there was no such proof. Reed v. Allegheny County, 330 Pa. 300, 199 A. 187. The charge in that respect was, therefore, error. Under ordinary circumstances we would be forced to send this action back for a new trial in order that proof of the duty, if any existed, might be produced. The error is of no

comes to us and as it was actually presented to the jury. After certain routine instructions the jury was told: "* * * if the plaintiff was lying on the railroad tracks of the defendant through the negligence of the defendant in the first instance at the crossing, and the servants, agents or employees of the defendant operating the train could or should have seen the plaintiff, and that one or more of said servants, agents or employees, *did see him,* with sufficient opportunity to act in the light of such observation and stop the train, then the plaintiff would be entitled to recover. In short, the plaintiff must prove by the fair preponderance or weight of the evidence not only that the defendant was negligent in its maintenance of the crossing, but that the trainmen *had actual knowledge of the presence of the plaintiff* on the tracks of the defendant in time to stop the train and thereby have averted the accident by the exercise of reasonable care and caution. If the defendant was negligent in its maintenance of the crossing which caused the plaintiff to be injured in the first instance, and wander some distance from the crossing and be in a lying position thereon, it must appear not only that the defendant's employees could have or should have seen the plaintiff lying on the right of way some distance from the crossing, but that they *did see him* at a time and with sufficient opportunity to act in the light of such observation and have stopped the train and averted the accident." (Emphasis supplied.)

The theory of the defense was that plaintiff was a trespasser to whom the railroad owed no higher duty than to avoid wantonly injuring him. The law which the trial judge felt was applicable to this phase of the suit was also gone into. It is too lengthy to repeat verbatim, but the heart of it follows:

"So, to review, where the plaintiff is a trespasser, there is no duty on the part of the defendant to be observant of persons lying on the tracks of the defendant, where the defendant does not know of, or is not required to anticipate the presence of the plaintiff on the defendant's tracks. If the plaintiff is a trespasser, it must appear not only that the defendant could have or should have seen the plaintiff lying on the tracks of the defendant, but that the defendant *did see the plaintiff* at a time and with sufficient opportunity to act in the light of such observation and have stopped the train and averted the accident.

"In other words, if the plaintiff was a trespasser, the doctrine of wanton negligence applies, for the defendant can only be held responsible for wanton negligence if the plaintiff is a trespasser. Wanton negligence as distinguished from ordinary negligence is characterized by a realization on the part of the tort-feasor or the person at fault, or at least what would cause such realization to a reasonable man, of the probability of injury to another, and by a reckless disregard nevertheless of the consequences.

"It is not wanton negligence to fail to use care to discover the presence of an unanticipated trespasser on the defendant's right-of-way, or railroad track, but it is wanton negligence to fail to use ordinary and reasonable care to avoid injury to a trespasser after his presence has been ascertained." (Emphasis supplied.)

■ Under the above instructions plaintiff could not succeed unless the jury concluded that the defendant's train crew saw him "* * * at a time and with sufficient opportunity to act in the light of such ob-

present importance since the over all test given to the jury by which to appraise the negligence of the railroad on the complete cause of action was whether there was proof that any member of the train crew saw Conry in time to avoid injury to him by the exercise of reasonable care.

On this appeal it is contended for the first time that appellant waived its right to require proof of its duty to maintain the crossing. The question of the necessity of that proof was argued on the merits at the trial and decided by the trial judge. In that situation the railroad cannot fairly be said to have waived the necessity for such proof.

servation and have stopped the train and averted the accident." If the jury made that finding alone, plaintiff was entitled to a verdict on defendant's theory that he was a trespasser since the legal equivalent of that finding is that defendant was guilty of wanton negligence toward him, viewing him as a trespasser. For plaintiff to succeed under his own version of the accident, the jury had to make the identical finding, above quoted, in addition to having been previously satisfied that plaintiff's hazardous position on the tracks was due to defendant's negligence in the first instance at the crossing. The jury's general verdict must be construed at the very least as a determination that defendant was guilty of wanton negligence as that term was defined by the trial judge. Without that finding, no verdict for plaintiff under either ground of recovery was sanctioned by the charge. With it, plaintiff was entitled to a verdict regardless of defendant's asserted negligence at the crossing.

■ Our appellate function in reviewing this aspect of the trial would be exhausted if we could but state that there was sufficient evidence before the jury to support such a finding. Though we have given plaintiff every reasonable inference to be drawn from the evidence and have considered it in the light most favorable to him, we cannot say that the jury had before it evidence to support that decisive finding. There must be a new trial.

■ There were three employees of the defendant riding the freight train, which was composed of the locomotive, an engine tender, caboose and 22 freight cars partly loaded, partly empty. The only one of the train crew who saw the plaintiff lying on the tracks was the head brakeman, Lannis,

whose testimony has already been outlined at length. There was no evidence that the train could have been stopped within the 80 feet by the exercise of reasonable care, and the accident thereby averted. Nor has plaintiff so contended before this court. Neither was there evidence that the plaintiff was seen beyond the 80 feet and within a distance in which the train could have been safely stopped. Plaintiff first argues that "The jury was justified in believing that a reasonable man in the same position as the brakeman *would have noticed* the white object at 800 feet [the distance the headlight was focused ahead], got in a better position to stop the train as he approached closer and closer, and finally recognized the fact that it was a man long before Lannis had." (Emphasis supplied.) Plaintiff here builds on a faulty premise, the same one rejected by this court in Green v. Reading Co., 3 Cir., 183 F.2d 716, where the Pennsylvania authorities are discussed. Under the charge the question confronting the jury was not whether defendant's employees had failed to use care to discover the plaintiff's presence but whether the train crew saw the plaintiff in time to stop and avert the accident by the exercise of reasonable care.

■ The balance of plaintiff's argument to support the verdict should have been presented to the trial court for submission to the jury in the charge and not reserved for appeal. We are told in effect, and agree, that the defendant's duty toward a trespasser to avoid wantonly injuring him is stated more broadly in the Pennsylvania cases than the version presented to the jury in the charge. We are referred to the Restatement of Torts, Section 336 and Comment (b)[5] which was cited with approval

---

5. Restatement of Torts, Section 336 reads as follows:
  "Activities Dangerous To Known Trespassers.
  "A possessor of land who knows that another is trespassing thereon or from facts known to him should know or believe that another is or may be doing so, is subject to liability for bodily harm thereafter caused to the trespasser by the possessor's failure to carry on his

activities upon the land with reasonable care for the trespasser's safety.
  "Comment:
  "a. * * *
  "b. *Precautions when possessor's activities highly dangerous.* If the activity which a possessor of land carries on upon it is one which, even though carelessly conducted, is likely to cause only some harm which, though substantial, is less than death or serious bodily

in Frederick v. Philadelphia Rapid Transit Co., 337 Pa. 136, 141, 10 A.2d 576. Obviously the feature of it most applicable to the present facts is not the rule that the defendant's duty to exercise reasonable care for a trespasser's safety arises when he *knows* that another is trespassing as the jury was repeatedly told. It is instead the broader rule that such a duty arises also when the defendant *from facts known to him should know or believe that another is or may be trespassing.* This court has heretofore acknowledged Section 336 to be expressive of the Pennsylvania law, Green v. Reading Co., supra. Plaintiff is addressing his argument to the alternate principle when he says, as he does, "Were they [the jury] not justified in believing that under the circumstances Lannis must have known it was a man before getting within 80 feet of him? And could they not have decided that Lannis should have realized the probability of its being a man and taken appropriate action in time to avert this tragedy?" Since the jury did not have before it the interpretation of the rule from Section 336 of the Restatement, its decision for the plaintiff cannot be construed as a finding that from the facts disclosed to it the defendant should have known or believed that the plaintiff was or might have been trespassing.

As this case must be sent back for a retrial it should be noted that appellee's above mentioned argument under the rule as set out in Section 336 of the Restatement may become most pertinent depending, of course, upon the evidence and the charge of the court. The same general thought applies to opinions of the type of Cheslock v. Pittsburgh Railways Co., 363 Pa. 157, 163, 69 A.2d 108, dealing with constructive notice to the defendant by virtue of constant trespassing [see Section 334, Restatement of Torts]. These, while of no help at this time since no evidence of that sort was introduced, may well become of vital importance at a retrial. It should also be emphasized that entirely apart from plaintiff-appellee's theory of defendant-appellant's wanton negligence to him as a trespasser, he claimed that his injuries, including those incurred when he was struck and run over by the tender below the crossing, resulted directly from his fall at the 9th Street public crossing which was caused by the negligent maintenance of that crossing by appellant who was responsible in whole or part for such maintenance. We reiterate that under Pennsylvania law in order for that cause of action to go to the jury there must be affirmative proof of the railroad's responsibility to maintain the crossing. See Reed v. Allegheny County, supra.

Appellant also argues that the trial court erred in allowing the jury to pass on the question of mental suffering of plaintiff due

harm, the possessor is not required to exercise care for a trespasser's safety unless he knows of his presence at some point made dangerous by the activity or unless he sees an object or hears a sound which makes him regard the presence of a trespasser as substantially certain or at the least highly probable. On the other hand, the gravity of the danger threatened by an activity which, unless carefully carried on, is likely to cause death or serious bodily harm, requires the possessor to exercise reasonable care not only when he knows that a trespasser is at some point made dangerous by it or is reasonably certain or regards it as highly probable that he is at such a point, but also when he sees an object or hears a sound which causes him to realize that there is a substantial chance that the trespasser may be at such a

point. This is in accordance with the tendency of the law not only to require a greater amount of care where life and limb are at stake, than where only some minor harm is likely to occur, but also to extend the duty of protection to persons to whom no duty would be owing if a less serious harm were threatened.

"Illustration:

"1. The engineer of the X & Y Railroad Company sees lying upon the track a pile of clothing such as would give a reasonable man cause to suspect that it might contain a human being. Under these circumstances the engineer is not entitled to assume that it is not a human being but is required to keep the engine under control until he is certain that it is not such."

to any personal deformity, mutilation or disfigurement arising from the accidents involved. It is contended that there was no direct evidence of this and further that it had not been pleaded.

The complaint alleged that Conry was "* * * seriously and permanently injured and disabled in the following particulars: (a) his right leg was severed from his body. (b) he received abrasions and contusions of the face and head. (c) he suffered a fracture of the skull and a concussion of the brain." It is further stated that he "* * * has and will suffer great pain and inconvenience." And that "He has and will be obliged to purchase artificial limbs." Dr. George Long testified that Conry had a complete loss of his right leg above the knee joint; that he now has an artificial leg; that he cannot move around with it as well as he could with a natural leg; that he is 60% disabled for mill work. Dr. U. A. Carpenter, also a witness at the trial which was held October 16, 1950, pointed out an existing scar on Conry's forehead the dimensions of which are not in the record. Conry said he had to go around on crutches for about five months. After that he obtained an artificial leg but had considerable trouble in properly adjusting it. He stated "I had to get three new tops; that is my stump started getting bigger instead of shrinking." He also told of going to the Braddock Unemployment Office to ascertain if there was any work for a handicapped person.

Under the language of the complaint and permissible inferences from the above testimony and having in mind the grievous injury and relatively small amount of the verdict the error, if any, was a minor one. If this item of damage is to be persevered with at the new trial it would be well to amend the complaint accordingly and to offer whatever proof there may be, if any, in that connection.

The final point that the verdict is against the evidence and the weight of the evidence has already been covered as much as need be.

The judgment of the district court will be reversed and the case remanded for a new trial on the merits.