### CONRY
### v.
### BALTIMORE & O. R. CO.
### No. 11111.

United States Court of Appeals,
Third Circuit.

Argued Nov. 20, 1953.

Decided Dec. 22, 1953.

Vincent M. Casey, Pittsburgh, Pa. (Margiotti & Casey, Pittsburgh, Pa., on the brief), for appellant.

Frederic G. Weir, Pittsburgh, Pa. (Thomas Park Shearer, Pittsburgh, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

We set aside the first judgment in this personal injury suit and returned it to

the district court for retrial. 3 Cir., 1952, 195 F.2d 120. The case now comes to us following a second verdict in favor of the plaintiff. Since in the referred to opinion we outlined the factual situation in detail we will not go into that phase any more than is necessary to background the questions presently involved.

■ The first of these arises out of the contention that appellee wholly failed to show affirmative proof of appellant's responsibility for maintaining the street level crossing at Ninth Street, Braddock, Pennsylvania, where its tracks and Ninth Street form a right angle crossing. Such proof was necessary under Pennsylvania law which governs this diversity action. Reed v. Allegheny County, 1938, 330 Pa. 300, 199 A. 187.

■ There was persuasive evidence at the trial that appellant had maintained the crossing for many years prior to the accident date of August 8, 1947 and this was admitted as the case developed.[1] That fact created a presumption of an existing but lost agreement between the railroad company and the public authorities under the probable provisions of which it was the duty of the railroad to maintain the crossing. Reed v. Allegheny County, supra, 330 Pa. 300, 303, 199 A. 187; Jennings v. Susquehanna & N. Y. R. R. Co., 1925, 84 Pa.Super. 442, 444, 445. The railroad's contention is that the testimony of its assistant division engineer and of the division engineer destroyed the admitted presumption. The record fails to support this. Crawford, the assistant, said that appellant had maintained and repaired the Ninth Street crossing roadway and sidewalk from at least 1930. He stated that " * * * I know that we don't have definite records of the maintenance of those crossings, but we do maintain them." According to him existent time sheets for work done at the crossing would not extend back for more than three years. He was asked whether he had been able to find any records which would shed any light or lend any assistance in determining what commitments if any appellant had made to anybody relative to the crossing from the time it was constructed to the date of the accident. His answer was "No, I have located no records that bear on the maintenance of that crossing." The division engineer testified that he had no knowledge of any agreement between appellant and the Borough of Braddock with respect to maintenance and repair of the Ninth Street crossing. Earlier in his testimony he said that he was in charge of the appellant's tracks with particular reference to the Braddock area and that he had considerable information about the borough roadway which crossed the railroad tracks. He seemed to doubt that he possessed all information concerning this. As the transcript reads, his answer was, "Well I have considerable—I have the authority and considerable information, whether I have all."

■ From that evidence we are entirely satisfied that the presumption of responsibility of the railroad for maintenance of the crossing properly remained in the case and that appellee was entitled to have it submitted to the jury. Appellee urges two other reasons why appellant's duty in that respect created a jury question.[2] Since in our view appellee is clearly right on his first proposition there is no need of passing upon these.

■ Appellant then argues that the testimony wholly fails to show any negligence in the maintenance of the crossing. This is contrary to the record. Conry, the plaintiff, who was twenty-one years old at the time of the accidents, testified that he was crossing the tracks on the sidewalk at the Ninth Street crossing " * * * and as I was coming onto the first rail of the third track my foot had

1. In its brief appellant states that " * * the Borough has never maintained the crossing."

2. They are that the original possessor of the right of way, the Pittsburgh & Con-

nellsville Railroad, had the statutory duty of maintaining the crossing which later devolved upon appellant and that the proofs showed that not only Ninth Street but Halket Street, along which the tracks run, existed prior to the tracks.

went into a hole. When it went into a hole it sort of twisted my body inward, and I fell sidewards, where I couldn't do anything but hit the ground." He said that as he crossed, the paving on the crossing was dark—" * * * the crossing surface itself was just dark." In addition there was ample evidence which if believed established constructive notice to appellant of the condition.

■ In his fall on the crossing, which occurred approximately a half hour after midnight August 8, 1947, Conry struck his head. Immediately thereafter he was in a dazed condition and remembered nothing further until four or five days later when he was in the Braddock hospital. Around two o'clock the morning of the accidents an object which turned out to be Conry was seen on appellant's tracks about seventy-five feet west of the Ninth Street crossing. He was there struck by the engine tender of a freight train owned and operated by appellant and which was moving east. On this phase of the case the court charged the jury that:

> "It is not negligence to fail to use care to discover the presence of an unanticipated trespasser, but it is negligence within the meaning of the law to fail to use ordinary and reasonable care to avoid injury to a trespasser after his presence has been ascertained or under all the circumstances should have been ascertained. The defendant's duty to exercise reasonable care and caution for the plaintiff's safety did not arise unless and until the defendant learned of the plaintiff's presence or perceived facts which would have indicated the plaintiff's presence on the right of way of the defendant."

That language is in strict accord with Pennsylvania law. Frederick v. Philadelphia Rapid Transit Co., 1940, 337 Pa. 136, 141, 10 A.2d 576; Green v. Reading Co., 3 Cir., 1950, 183 F.2d 716; Conry v. Baltimore & Ohio R. Co.,

supra, 195 F.2d 120, 126. See Restatement of Torts, Section 336. Appellant asserts that under Davies v. D. L. & W. R. Co., 1952, 370 Pa. 180, 87 A.2d 183, 31 A.L.R.2d 781, Pennsylvania is back to the wanton and wilful test for recovery by trespassers, even under the special circumstances outlined in the charge. The Davies case is readily distinguishable from the issue before us. It concerned trespassing children and, contrary to the instant facts, there was no timely notice to the train crew of the possibility of such trespassers. The Frederick decision is not mentioned or in any way referred to in the Davies opinion. Nor has Frederick been overruled or questioned by any later Pennsylvania case which has been called to our attention. Factually there was ample evidence concerning defendant's exercise of reasonable care, or the lack of it, with respect to the second accident to present a jury question.

With the questions of appellant's duty to maintain the crossing and respecting the court's charge re the second accident resolved as they have been appellant's contention that it was guilty of no negligence which was the proximate cause of plaintiff's injury is disposed of completely and need not be discussed.

■■ Appellant also argues that the trial court erred in permitting an expert to express his opinion that Ninth Street antedated the railroad tracks crossing it. Whether the situation called for expert opinion was very largely a matter for the judgment of the district judge. Whether the expert was properly qualified again was for the trial court. R. C. Graham, the expert, possessed over fifty years' experience with old land and title records in that vicinity. If there was error in connection with the admission of his testimony it was insubstantial because as has been shown above appellee had already firmly established the presumption of appellant's duty to maintain the crossing.[3]

3. It might be noted that J. F. Moorhead, an employee of appellant, testified on behalf of the railroad that on the plans of the critical area which he investigated, a

Appellant's final point is that it was seriously prejudiced at the trial by the conduct of the district judge.

We do not think that severally or in toto the activities of the court substantially harmed appellant. This was a long trial consuming three court weeks. It was the second full trial and the suit seems to have been partially heard on at least one other occasion. During plaintiff's presentation of evidence there was testimony to the effect that appellant had maintained the crossing. Not until that testimony had been given did the defense concede the maintenance. Thereafter to the apparently utter surprise of plaintiff's attorney railroad employees testified that the Pittsburgh & Connellsville Railroad Company originally owned the particular right of way. One of the railroad witnesses stated that the Pittsburgh & Connellsville in 1912 merged into the Baltimore & Ohio Railroad Company, a Pennsylvania corporation. And the testimony is that since that date appellant has controlled the latter company. In addition to Crawford's evidence on operation and maintenance already mentioned another railroad witness testifying with reference to this said that appellant since 1912 has run all the trains and maintained all the stations, crossings and other facilities with which Pittsburgh & Connellsville and the Baltimore & Ohio of Pennsylvania have any connection including the Braddock area.

The confused ownership of and responsibility for the right of way at the Ninth Street crossing coming to light at this second trial held in November, 1952, and having in mind that the accidents had occurred more than five years previously, was, as is obvious from a reading of the transcript, the reason for the district judge being more active in this cause than ordinarily. He did endeavor to ascertain the status, with respect to the crossing, of the three closely related railroad corporations and in so doing asked an unusual number of questions.

In an effort to clarify the corporate picture he had, on his own motion, brought into court a report of appellant to the Interstate Commerce Commission, a copy of which was filed with the Securities & Exchange Commission, portions of which were allowed into evidence. Counsel for appellant frankly states that this was of itself not prejudicial error and that all of the information so produced could have been properly developed on behalf of appellee by written discovery proceedings.

Practically all of the remainder of the court's objected to participation in the trial was in connection with the testimony as to whether Ninth and Halket Streets or the railroad tracks came first. One incident stressed by appellant stemmed from evidence tending to locate the railroad in the bed of Halket Street and occurred during the cross-examination of J. R. E. Hiltz, an employee of appellant. He testified that a defense map exhibit indicated a Halket Street east of Tenth Street. Plaintiff's counsel next asked him, "Well, can we assume then that there is a Halket Street betwen Eighth and Tenth Streets in the Borough of Braddock?" The witness answered, "I couldn't answer. I couldn't do anything, sir, beyond what you have in your hand and what the maps show. I can't assume anything. I have told you, and I don't think I need repeat, the determination of the existence of a street is one of the most difficult tasks—and if you don't know it, I am telling you it is, and I can prove to you it is— that I know of." Immediately thereafter the court referring to plaintiff's attorney, said to the witness, "He happens to be a City Councilman, he should know, Mr. Hiltz." Though the remark was ill-advised we fail to see that the defense was substantially damaged by it. While an incumbent City Councilman[4] might be expected to know the then present streets we doubt that the jury would recognize him from his title of Councilman alone as an authority on

railroad was shown before any existing streets, crosswise or otherwise.

4. Not "City Counsel", according to the transcript, as seemed to be the impression at oral argument.

a street which, as far as the record revealed, had not had actual existence in the region of Ninth Street for many, many years.

The protested conduct centered around what were really minor elements in the litigation. The search for the responsible corporation and the attempts to establish whether the railroad or the two streets came first were inconsequential in the light of the admitted maintenance of the crossing by defendant-appellant and the lack of dispositive testimony to destroy the presumption which flowed from it. A judge's conduct which is prejudicial to a litigant could, of course even in those circumstances, constitute reversible error, but we are not here confronted with that sort of situation. See United States v. Aaron, 2 Cir., 1951, 190 F.2d 144; Simon v. United States, 4 Cir., 1941, 123 F.2d 80, certiorari denied 314 U.S. 694, 62 S.Ct. 412, 86 L.Ed. 555. Appellant's attorney, a thoroughly competent trial lawyer, did not have a day in the country of it, but in great part that was due to the type of defense interposed. It might be that the jury was not unduly impressed with what that body may have considered "technical defenses" and which in this instance were for the first time injected into the case five years after the accidents.

The judgment of the district court will be affirmed.