Elmer E. PICARD, Plaintiff,

v.

PITTSBURGH & OHIO VALLEY RAIL-
WAY COMPANY, a corporation,
Defendant.

Civ. A. No. 13731.

United States District Court
W. D. Pennsylvania.

July 3, 1957.

**584**

———◇———

Robert B. Ivory, of Evans, Ivory & Evans, Pittsburgh, Pa., for plaintiff.

Alan D. Riester, of Brandt, Riester, Brandt & Malone, Pittsburgh, Pa., for defendant.

GOURLEY, Chief Judge.

This is an action under the Safety Appliance Act to recover damages for injuries sustained while plaintiff was employed as a brakeman for the Pittsburgh and Ohio Valley Railway Company, 45 U.S.C.A. §§ 9 and 11.

Upon jury trial verdict was returned in favor of plaintiff in the amount of $75,000, and the jury, in answer to specific interrogatories, found defendant guilty of violating the Safety Appliance Acts which in each instance was a substantial contributing factor in bringing about the accident.[1]

The matter before the court relates to defendant's motion for new trial in which it is contended that the verdict is against the evidence and law; that the court erred in its charge by failing to charge that plaintiff's own conduct could have been the sole proximate cause of the accident; that the trial judge followed a pattern of conduct and applied individual technical rules which were prejudicial and burdensome to defendant both in the pre-trial conference and during trial; that plaintiff's counsel presented an improper argument to the jury and that the verdict was excessive and was based on passion and prejudice.

In considering the testimony and inferences to be drawn therefrom in a light most favorable to the plaintiff, it appears that plaintiff brakeman was applying the handbrake of a heavily loaded flatcar in defendant's moving train, when he was violently thrown from the car to the ground. Suit was brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. on the theory of negligence and under the Safety Appliance Act alleging an inefficient handbrake and that the train was operated without eighty-five percent of its cars being coupled with air.

In the pleadings as originally filed, at pre-trial and during presentment of plaintiff's case, proof was offered to establish two separate and distinct violations of the Safety Appliance Act and negligence under the Federal Employers' Liability Act. However, at the close of testimony, plaintiff elected to proceed solely on the two alleged violations of the Safety Appliance Act, and in view thereof, the cause of action under the Federal Employers' Liability Act based solely on negligence was withdrawn from the consideration of the jury.

Such procedure is proper and in accordance with the law of this Circuit. McCarthy v. American Eastern Corporation, 3 Cir., 175 F.2d 724; German v. Carnegie-Illinois Steel Corporation, 3 Cir., 156 F.2d 977.

1. Is the Verdict against the Evidence and the Law?

██ Defendant advances the proposition that the weight of the evidence established that plaintiff's conduct was the sole proximate cause of the accident

---

1. "Was the train involved in the accident engaged in a train movement or switching operation?

"Answer: Train movement.

"If you find the train involved in the accident was engaged in a train movement, was the failure to have at least 85% of the cars attached to the engine coupled with air and subject to the control of the engineer of said train a substantial contributory proximate cause of the accident?

"Answer: Yes Yes No "

"Was the hand brake on the car involved in the accident an efficient hand brake at the time of the accident?

"Answer: Yes —— No No

"If the answer to the above question is 'No', answer the following:

"Was the failure of the defendant to have an efficient hand brake on the car at the time of the accident a substantial contributory proximate cause of the accident?

"Answer: Yes Yes No "

by his alleged violation of a company rule providing that no hand brakes were to be applied while proceeding down hill without an advance signal from the engineer.

The rule to which defendant adverts, at most, relates to the issue of possible contributory negligence on the part of the plaintiff.

Since the action is grounded upon violation of the Safety Appliance Acts, the issue of contributory negligence is ruled out of the proceeding. Carter v. Atlanta & St. Andrews Bay Ry. Co., 338 U.S. 430, 70 S.Ct. 226, 94 L.Ed. 236.

Upon a most intensive review of the charge, I cannot but help conclude that adequate allowance was made for the jury, if it saw fit, to find sole responsibility with the plaintiff, when the court emphasized the requirement that the violation of the Safety Appliance Acts must have been a substantial contributing cause of the accident before plaintiff would be permitted to recover.

It would, indeed, constitute a usurpation of the jury's prerogatives, for the court to conclude to the contrary when defendant itself conceded that air was not coupled through the train and in the light of the jury's specific findings on violation of the Safety Appliance Acts and their proximate causation to the plaintiff's injuries.

2. Did the Court Err in Its Charge by Failing to Charge that Plaintiff's Own Conduct Could Have Been the Sole Proximate Cause of the Accident?

The court in its charge to the jury emphasized repeatedly that recovery could be had if and only if the violation of the Safety Appliance Act by the defendant was a substantial contributing cause of the accident.[2]

The interrogatories submitted to the jury asked whether or not the failure to use air and/or the failure to provide an efficient hand brake was "a substantial contributing proximate cause of the accident." The terms "proximate cause" and "substantial" were defined and explained.

It is further significant to note that at the conclusion of the charge, the court requested either counsel for any additional instructions to which both answered in the negative.[3]

Having failed to object to the instructions given or to request further instructions when given the opportunity to do so, counsel cannot now complain unless fundamental error were present.

I am satisfied that the charge read as a whole made allowance for the jury's possible finding of plaintiff's sole responsibility for the accident.

It is to be noted that defendant has discontinued trial counsel and has now retained other counsel who has argued the motion for new trial. I am unable to countenance the argument that present counsel would have presented a request for special instructions had the case been tried by them. The orderly rules which govern the administration of justice would undoubtedly be driven into chaos, if a litigant could secure a new trial by the simple expedient of obtaining other counsel after a case has been tried by advancing the thesis that present counsel would have proceeded otherwise than trial counsel.

3. Did the Trial Judge Follow a Pattern of Conduct and Apply Individual Technical Rules Which Were Prejudicial and Burdensome to Defendant Both in the Pre-trial Conference and During Trial?

Present counsel for the defendant directs a vigorous attack against both the pre-trial procedure of this court and the

---

2. "If you find the defendant did not violate either or that the violation was not a substantial contributing factor to bring about the accident, then the plaintiff is not entitled to recover." Trial Record, page 839.

3. "Are there any additional instructions that counsel for either the plaintiff or defendant wish the court to give the jury?
"Mr. Bane: No, none your Honor.
"Mr. Ivory: I have none, your Honor."
Trial Record, page 867.

conduct of the trial judge in the trial of the proceeding.

The pre-trial procedure adopted by this court and in use in recent years is the product of the combined thought, study, and judgment of not only its entire complement but epitomizes the practice generally followed by the United States Courts throughout the nation.

I have stated before, and I again reiterate, that I do not consider a court of justice a boxing ring to match competitive skills. Rather, I deem a court as a forum where all relevant facts, from which honest and impartial minds may deduce the truth, must be presented. Trick or artifice, concealment or subterfuge have no place in a court of justice.

Our Rules of Civil Procedure, more particularly the rules relating to interrogatories, admissions and discovery, have channeled the policy of this court into the chartered vistas of complete and unequivocal disclosure. Rules 31–37, 28 U.S.C.A. Whether defendant or plaintiff believes they were hurt or helped by this policy in no way detracts from its efficacy and fundamental soundness.

It is with extreme reluctance that I find it necessary to make the following comment relative to the approach and actions of trial counsel for the defendant engaged in the pre-trial and trial of this proceeding.

During the twelve years that I have been a member of this court, I must categorically assert that I have learned to have the highest regard for trial counsel and have observed that he has attained enviable success in the practice of his profession. Furthermore, the law firm which represented the defendant and with which trial counsel was associated is of the highest stature in the legal profession. I note, however, that trial counsel's participation has generally been confined to actions based on common-law negligence, and this was a rare, if not his first case, to my knowledge, that he ever was involved in the trial of an action under the Federal Employers' Liability Act and/or The Safety Appliance Act.

As an undoubted consequence of his limited experience in this field, I had most substantial difficulty in having trial counsel realize that the basis of liability under the Acts which were being considered by the court created and presented an entirely different problem than that which existed in actions based on common-law negligence. In addition thereto, the court found it most difficult to make counsel realize that full and complete discovery was required in the trial of cases in this court, and that copies of all records that related to the issues joined in the proceeding had to be presented to adversary counsel and to the court. In view of the foregoing, a reading of the record does not reflect a true perspective of the circumstances which existed.

I have never extended myself in an effort to assist counsel for a party in a proceeding more than I applied in this case. I must state that the records of both the pre-trial and trial of this action establish a most unfortunate lack of knowledge and realization on the part of trial counsel of the duty which he owed to the court to present all evidence within his knowledge that would aid or assist in the trial and adjudication of the proceeding.

In addition to the mechanics that were applied to have all facts presented, the court extended a helping hand to defense counsel by making available for his reference the legal authorities that related to the principles of law that govern the adjudication of the action.

The events which occurred herein are analogous to a well-informed and successful medical practitioner being called upon to perform critical surgery concerning a type of surgery about which the practitioner had little or no past experience and where the best possible effort was applied but the success of surgery was not reached, after which the patient secures an eminent surgeon and finds himself in a position that he is unable to correct the damage which has been done through lack of seeing and attending the patient in the first instance.

In view of the spirited argument of counsel presently retained that the court was not fair and impartial in the administration of the trial as it related to then trial counsel for the defendant, I have no alternative but to advert to these unfortunate circumstances in order that the problem can be fairly and completely pointed out.

In concluding that the pre-trial procedure followed by the trial judge was regular in all respects and that the trial judge did not indulge in applying burdensome technical rules in supervising and regulating the activities of trial counsel for the defendant, I have reviewed with great care and meticulous evaluation the 127 pages of the pre-trial record and the 877 pages of the trial record.

Indeed, to arbitrarily lift a part of the trial record out of context, devoid of background and circumstance, might lead one to the conclusion that what is stated would be improper. In this case, therefore, to understand and appreciate the problem which confronted the trial judge, the full and complete record of this proceeding, from the first page of the pre-trial record to the last page of the trial record, must be considered and evaluated.

A review of the entire record strikingly illustrates the extraordinary efforts to which the court extended itself to familiarize defendant counsel with federal court procedure and the shortcomings of defendant counsel to so comply.[4]

### 4. Did Plaintiff's Counsel Present an Improper Argument to the Jury?

Defendant complains at length against portions of closing address of plaintiff's counsel. This complaint primarily is directed to his use of certain hypothetical figures as illustrative of the means which the jury might use in their calcu-

---

4. Instructions to counsel for the parties as to what the court required at pre-trial:

 Pre-trial Record — Pages 1 through 10
 " " " — Page 57
 Trial Record — Pages 116 through 123
 " " — Pages 152 through 167
 " " — Pages 284 through 286

Assistance extended by the trial judge to counsel for defendant as to applicable principles of law:

 Pre-trial Record — Pages 16 through 18
 " " " — Pages 20 through 26
 " " " — Pages 44 through 46
 " " " — Pages 92 through 94
 Trial Record — Pages 447 through 450
 " " — Pages 457 through 470
 " " — Pages 536 through 537
 " " — Pages 591 through 598
 " " — Pages 602 through 609
 " " — Pages 629 through 638
 " " — Pages 731 through 741
 " " — Pages 777 through 784

Statement of trial counsel for defendant as to inexperience in Federal court in cases of this type at trial:

 Pre-trial Record — Page 23
 Trial Record — Page 781
 " " — Pages 777 through 784
 " " — Pages 796 through 837
 " " — Pages 867 through 871

Failure of trial counsel for defendant to comply with pre-trial requirements and orders:

 Trial Record — Pages 9, 10, 26, 27 and 28
 " " — Pages 31 through 43
 " " — Pages 62 through 74
 " " — Pages 114 through 139

lation of damages. This procedure has been frequently, if not regularly, employed by counsel in final argument as a basis of assisting lay jurors in evaluating damages. At no time did counsel for the plaintiff, in his hypothetical illustrations, suggest or intimate that the figures he employed represented the specific damages in the case at trial. But. even assuming that defendant's objection is well taken, counsel for the defendant made no such objection during or at the close of the address or, for that matter, at any time prior to the filing of the motion for new trial.

■ Such a complaint must be made during or at the close of the address. Failure to make timely .objection effectively bars a subsequent complaint. Chicago & N. W. Ry. Co. v. Green, 8 Cir., 164 F.2d 55; St. Louis Southwestern Ry. Co. v. Ferguson, 8 Cir., 182 F.2d 949.

I am satisfied that this court conducted the trial of this case with a sense of strict impartiality and fairness. A hotly contested case, as this one proved to be, inevitably aroused comment of the court or counsel, which isolated from context or devoid of the atmosphere or manner in which it was spoken may raise doubts of propriety. Nevertheless, no comment in this record, when taken in the proper perspective and balance of the entire record could be deemed to have improperly influenced the jury, nor was any comment intended or calculated to do so. Conry v. Baltimore & O. R. Co., D.C., 112 F.Supp. 252, affirmed 3 Cir., 209 F.2d 422.

5. Was the Verdict Excessive and Based on Passion and Prejudice?

■ Counsel for defendant contends that the verdict was contrary to the evidence in that it was excessive. As a result of this accident, plaintiff had suffered a herniation of the intervertebral disc and · extensive damage to the muscles, ligaments and soft tissues· of the neck and back. His condition was extremely painful necessitating frequent medication for pain, with pain' increasing upon physical activity. He was totally disabled for his former occupation as a brakeman and any other work involving physical exertion.

In addition, plaintiff suffered sexual impotency as a result of said accident.

Plaintiff, age 39, has a life expectancy of 35.9 years. His loss of earnings until date of trial was approximately $8,000. He incurred medical bills in the amount of $1,400. Plaintiff's annual continuing wage loss was $6,400 per annum. Assuming annual earnings of $6,400 and a work expectancy to age 65 of 26 years, plaintiff's probable loss in earning power would amount to the present worth of $166,400.

Further recognizing that in considering an award for pain and suffering, the jury was required to consider actual pain experienced and a span of probable pain in the future encompassing a possible long period of time of the equivalent of plaintiff's potential life span.

I cannot but help conclude that the award was commensurate with the amount of damages evinced in the record. The verdict was certainly not so large as to shock the judicial conscience. Thomas v. Conemaugh & Black Lick Railroad Company, 3 Cir., 234 F.2d 429.

In considering the instant motion for new trial, I have evaluated the complete record and exhibits with meticulous care.

Upon careful scrutiny of testimony elicited from plaintiff's witnesses, I am satisfied that it is consistent, coherent and logically sound, and, indeed, creates such inferences from which the jury could have reasonably concluded that the violation of the Safety Appliance Acts was the proximate cause of the accident resulting in plaintiff's injuries. To summarily expunge this testimony, and substitute the personal opinion of the court, would do violence to the processes and purport of the jury trial.

■ The choice of conflicting versions of the way the accident happened, the decision as to which witness is telling the truth and the inferences to be drawn

from the uncontroverted facts and the controverted facts are questions for the jury. If there is a reasonable basis in the record for concluding that the employer's violation of the provisions of the Safety Appliance Acts caused plaintiff's injury, it would be an invasion of the jury's function for the court to draw contrary inferences or to conclude that a different conclusion would be more reasonable. Thomas v. Conemaugh & Black Lick Railroad Company, supra.

Upon most thorough study and evaluation of the credible evidence and exhibits, I am convinced that the quantum of proof establishes that the verdict rendered was not against the evidence, weight of the evidence, or the law.

Motion for new trial is refused.

An appropriate order is entered.