Alvin H. FRANKEL, Administrator of the Estate of August A. Gregory, Deceased,

v.

PHILADELPHIA ELECTRIC COMPANY.

Civ. A. No. 68–1224.

United States District Court, E. D. Pennsylvania.

July 16, 1973.

Albert Schlessinger, Philadelphia, Pa., for plaintiff.

Perry S. Bechtle, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

Before the Court are Defendant's Motions for Judgment N.O.V. and New Trial following a verdict in favor of the Plaintiff rendered on March 23, 1972. The cause of action arose out of the death of August A. Gregory on July 8, 1967. The administrator of his estate brought suit against defendant Philadel-phia Electric Company under the Pennsylvania Wrongful Death and Survival Acts. In answers to special interrogatories, the jury found that defendant's employee, Edward McBride, was negligent; that his negligence was a substantial factor, or proximate cause of Mr. Gregory's death; that Mr. Gregory was not contributorily negligent; that damages under Survival Act were $1,200 and under the Wrongful Death Act were $106,470.

The factual background giving rise to the cause of action is largely undisputed. On July 7, 1967, August Gregory, a self-employed tile setter, lived with his wife and six children at 2421 Poplar Road, Havertown, Delaware County, Pennsylvania. On the evening of that date he commenced an automobile trip with his family to Sea Isle City, New Jersey. He was driving his 1967 Pontiac Station Wagon and in the car were his wife, who occupied the front seat with him, and five of their six children. A short distance from his house, his intended route took him to Eagle Road, on which he proceeded North toward Haverford Road. Approaching Haverford Road from the South, Eagle Road passes, with a considerable drop, over the P & W Railroad tracks. The approach to the overpass up to Haverford Road is three lanes in width—two lanes Northbound and one lane Southbound. As Mr. Gregory was proceeding North on Eagle Road and approaching the overpass, he was operating his vehicle in the right-hand lane and, at the same time, an Econoline van of the defendant, operated by its employee Edward McBride, was proceeding in the same direction in the passing or second Northbound lane, immediately to the left of the Gregory vehicle. At some point while the vehicles were on the incline approaching the crest of the overpass, a siren sounded and the driver of the defendant's vehicle saw flashing lights in his rearview mirror approximately 150′ to the rear of his vehicle. Christine Gregory, age twenty at the time of the trial, testified that when the siren sounded she saw a police

car approaching from the rear approximately eight car lengths behind the Gregory car and going twice as fast. Mrs. Gregory testified that she looked back and saw a police rescue wagon "at least two blocks behind us". When the siren sounded and defendant's operator saw the flashing lights to the rear, he edged over, or moved precipitately to his right to permit the emergency vehicle to pass. At that instant, one of the children yelled "Daddy". Mr. Gregory suddenly turned the wheel to the right and ran up over the curb about a foot with sufficient force to blow out the right front tire. Immediately prior to suddenly turning the wheel to the right, Mr. Gregory suddenly exclaimed, "Oh my God, this guy is on top of us." After Mr. Gregory got out of his car, he yelled at the driver, "What the hell do you think you are doing?" Following the incident, the defendant's driver went to call his dispatcher and Mr. Gregory rolled his car down to the P & W lot, which was at or near the Southeast intersection of Haverford Road and Eagle Road. He was angry and frightened from the incident and while he was in the P & W lot he started to change the tire. Suddenly be became weak. In the meantime, the defendant's driver returned to the lot and, because of Mr. Gregory's inability to complete the tire change, he took over and finished the job. Following this, Mrs. Gregory drove her husband home. Because it was apparent that he was ill, he was taken, shortly thereafter, to the Bryn Mawr Hospital, where he was placed under the care of Dr. Eric Freimuth, a neurologist. Mr. Gregory was diagnosed as having suffered a stroke which was described as either a blockage of a vessel, because of a spasm or some other reason, or bleeding into the left side of the brain. On July 8, 1967, the day following this incident, Mr. Gregory died.

In 1963, Mr. Gregory, in the course of a medical examination for insurance purposes, had his blood pressure taken and the readings were 190/112, 188/110 and 188/108. Dr. Freimuth testified that in 1963, when Mr. Gregory was examined for insurance purposes, he had hypertension to a moderately severe degree, that hypertension is a progressive disease and that this death was secondary to or related to his hypertension (N.T. 203–205). With respect to the cause of death, Dr. Freimuth's opinion was as follows:

" * * * It is my feeling that the events that occurred during the accident, with the resultant apprehension, fear, emotional trauma, anger, resulted in a rather marked rise in his blood pressure which was already at pre-existing high levels, or at least we can assume that because of the history of the hypertension, in people who have hypertension or high blood pressure, this is very prone to happen, and that this set off a chain of events which resulted in his stroke, and it was of such a caliber and such a degree that it led directly to his demise."

Dr. Freimuth further testified that people with hypertension are more susceptible to injuries such as stroke than people who do not have abnormally high blood pressure levels or do not have hypertension.

Dr. Robert K. Jones, a neurosurgeon, called by the defendant, testified that under the facts as given in a hypothetical question, an individual without hypertension would not have had the complication of stroke develop, and that given the facts contained in a hypothetical question, Mr. Gregory was more susceptible to hemorrhage of the brain and stroke than a person without hypertension and abnormal high blood pressure levels. His opinion was that Mr. Gregory's death was caused by the basic disease as "activated" by the stressful situation occurring on Eagle Road.

▮ This case is governed by Niederman v. Brodsky, 436 Pa. 401, 261 A.2d 84 (1970). Defendant argues that the only reasonable conclusion that one can draw from the record is that the predominant, if not the only, emotion displayed by decedent was anger at being

driven off the road, and as such the plaintiff is not entitled to recover under *Niederman*.

In the Court's opinion, however, the present record supports a factual basis for the jury to have found that the plaintiff's decedent was placed in personal danger of physical impact because of the direction of a negligent force against him and that he actually did fear a physical impact. His daughter testified that he was frightened. His widow testified likewise.

■ The Motion for New Trial is substantially a reiteration of points raised by defendant in its Motion for Judgment Notwithstanding the Verdict, excepting defendant's objection to the admission of the U. S. Life Tables, exhibit P13, and their inclusion with other exhibits that went out with the jury. During the course of the trial, the Court stated, "P13 was the page from the life tables, and the photostated or cut out page will be admitted." (N.T. 217). No objection is indicated at that point in the record. Later, defendant's counsel stated, "My recollection, sir, is that I objected to it at the time it was offered." N.T. 354). For the purpose of present motion, the Court accepts defense counsel's objection.

The charge of the Court (N.T. 335) covered the proper use of life tables admitted into evidence. Defendant does not indicate error in the charge on use of the tables. His objection is that the tables were admitted and went out with the jury.

Accredited life tables are admissible in actions for damages resulting in death, Conry v. Baltimore & O. R. Co., 112 F.Supp. 252 (W.D.Pa.1953), affirmed 209 F.2d 422 (3d Cir. 1953). See also, Littman v. Bell Telephone Co. of Pennsylvania, 315 Pa. 370, 172 A. 687, at 689, where the Court stated, "When the jury has these tables before it and locates on them the age of the person whose life expectancy is in issue, it is, on that issue, not at the end, but merely at the starting point of its calculations."

The motions of defendant for Judgment Notwithstanding the Verdict and, in the alternative, for a New Trial are denied.